Mayo CROOK, Plaintiff,

v.

PENN CENTRAL TRANSPORTATION COMPANY and U. T. U. Lodge 4, Defendants.

No. 76 C 880.

United States District Court, N. D. Illinois, E. D.

March 3, 1977.

Kendal A. Crooks, Chicago, Ill., for plaintiff.

Edward R. Gustafson, Chicago, Ill., for defendant Penn Central.

John J. Naughton, Chicago, Ill., for defendant U. T. U. Lodge 4.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion to Dismiss*

### I.

This is an action pursuant to Title VII of the Civil Rights Act of 1964 ("the Act"), 42 U.S.C. § 2000e *et seq.*, seeking to recover for alleged discrimination in employment based upon race. The amended complaint alleges that plaintiff was wrongfully discharged from employment with defendant Penn Central Transportation Company ("Penn Central"), on January 9, 1970, for failure to pay union dues to defendant United Transportation Lodge # 4.

Plaintiff, a black man, asserts that his discharge was discriminatory because: (1) Penn Central did not discharge white employees who were in similar delinquent status regarding union dues; (2) plaintiff was not accorded proper notice, or any notice in accordance with defendants' collective bargaining agreement, prior to discharge; (3) plaintiff's discharge was prompted, in part, by his refusal to participate in raffles and other union activities; and (4) plaintiff was not afforded the option of regular payroll deductions of union dues which had been afforded Penn Central's white employees.

Pending before the Court is defendants' motion to dismiss this action pursuant to Rule 12(b)(1) F.R.Civ.P., for lack of subject matter jurisdiction.

From the pleadings and exhibits filed in this action to date, it appears that the alleged discriminatory event occurred on January 9, 1970, and that plaintiff filed a charge regarding the claimed discrimination before the Equal Employment Opportunity Commission ("EEOC" or "Commission"), on June 5, 1970. On September 25, 1973, the EEOC issued a "Determination," wherein it held that defendants "had not violated Title VII as charged," and issued a right-to-sue letter which was received by plaintiff on December 9, 1975. Plaintiff's original complaint was received by the Clerk of the Court on March 8, 1976, and filed on March 16, 1976. Defendants were first informed of plaintiff's complaint, however, on July 14, 1976, when they were served with a copy of plaintiff's amended complaint.

Defendants have raised three grounds for dismissal of this action. First, that plaintiff failed to file a timely charge before the EEOC within the then applicable 90 day statutory period; second, that plaintiff failed to institute the instant action within 90 days after the EEOC's finding of "no probable cause;" and third, that plaintiff failed to institute this action within 90 days from the receipt of his right-to-sue letter. For the reasons set forth below, we deny defendants' first and third grounds for dismissal, and will await the presentation of further evidence prior to the disposition of defendants' second ground for dismissal.

### II.

■ On June 5, 1970, the date plaintiff filed his charge with the EEOC, 42 U.S.C. § 2000e–5(e) (1970) provided in pertinent part:

A charge under subsection (a) [of this section] shall be filed [with the EEOC] within ninety days after the alleged unlawful employment practice occurred.

Defendants assert that since plaintiff delayed the filing of his complaint before the EEOC for 148 days, this Court lacks subject matter jurisdiction over this action.

Plaintiff contends, however, that the 90 day period should have been tolled during the pendency of his "numerous formal and informal efforts to seek a private settlement of his complaint," Pl.Br. at 2, and that in any event, under the recent Supreme Court opinion in *Guy v. Robbins & Myers,* 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), the expanded 180 day limitations period of the 1972 amendments to the Act should apply to his charge.

In *Guy v. Robbins & Myers, supra,* the Supreme Court reaffirmed its holdings in *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975), to the effect that Title VII remedies are completely independent from contractual or other remedies available to an aggrieved employee, and held that the pursuit of formal grievance procedures would not act to toll the statutorily mandated filing periods of the Act. 429 U.S. at 236–240, 97 S.Ct. 441. Plaintiff's arguments regarding his attempts at informal settlement adds nothing to the analysis, for neither formal nor informal grievance procedures act to invoke the statutory rights created by Title VII, and thus, unless those rights are properly asserted in a timely manner, they are lost. We therefore hold that the statutorily mandated filing period was not tolled during plaintiff's attempts at formal and informal settlement.

■ Plaintiff's contention regarding the expanded 180 day limitations period of the 1972 amendments presents a far more interesting question, for it is the precise issue left open by the Court in footnote 17 of *Guy v. Robbins & Myers, supra,* 429 U.S. at 243, n. 17, 97 S.Ct. 441.

On March 24, 1972, Title VII was amended to extend the time within which to file a charge with the EEOC from 90 to 180 days from the alleged discriminatory occurrence. See, 42 U.S.C. § 2000e–5(e). In *Guy,* plaintiff filed her charge with the EEOC on February 10, 1972, 108 days after her October 25, 1971 discharge. In due course, the EEOC issued its determination and right-to-sue letter, having found that there was no reason to believe that Guy's discharge was the result of racial discrimination. Guy's suit in the District Court was met with a motion to dismiss which asserted, in part, that she had failed to file a charge with the EEOC within 90 days of her discharge. The District Court dismissed her action, and the Sixth Circuit affirmed by a divided vote. *Guy v. Robbins & Myers,* 525 F.2d 124 (6th Cir. 1975). The Supreme Court reversed the dismissal.

Following a careful analysis of the language and legislative history of the Act's 1972 amendments, the Court concluded "that Congress intended the 180-day period to be applicable to charges such as that filed by Guy, where the charge was filed with the EEOC prior to March 24, 1972, and alleged a discriminatory occurrence within 180 days of the enactment of the Act." 429 U.S. at 243, 97 S.Ct. at 450.

Since Guy's charge was filed within 180 days of the enactment of the 1972 amendments, however, the Court noted in footnote 17:

Accordingly, we need not decide whether the enlarged limitations period also redounds to the benefit of persons who filed a charge more than 90, but less than 180, days from the date of the alleged "occurrence," where the 180 days had run prior to March 24, 1972.

Plaintiff's charge herein—filed 148 days after the alleged discriminatory occurrence but more than 180 days prior to March 24, 1972, and "pending" before the Commission on March 24, 1972—falls squarely within the "undecided" parameters of footnote 17. We hold that the same reasoning which extended the 180 day period to charges filed and pending before the EEOC which alleged a discriminatory occurrence within 180 days of the enactment of the 1972 amendments, applies with equal force to charges filed within 180 days of the alleged discriminatory occurrence and pending be-

fore the Commission on March 24, 1972, even though the alleged discriminatory event did not occur within 180 days of March 24, 1972.

> Section 14 of the 1972 Act provides: The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and to all charges filed thereafter.

In *Guy, supra,* defendants contended that the 1972 amendment to section 706 should not apply to the charge filed by Guy with the EEOC, since, being untimely when filed, her charge could not have been "pending with the Commission on the date of enactment of this Act." In analyzing and rejecting this objection, the Court reasoned: 429 U.S. at 242, 97 S.Ct. at 450. (Footnote omitted, emphasis in original).

> This reading of "pending"—confining it to charges still before the Commission *and* timely when filed—is not the only possible meaning of the word, is largely rebutted by the legislative history, and renders the language of § 14 virtually meaningless insofar as the enlarged limitations period is concerned. Since Congress also applied the enlarged limitations period to charges, whether or not untimely on March 24th, "filed thereafter," we should not presume Congress created this odd hiatus in retroactivity . . . unless congressional intent to do so was conveyed by language more precise than "pending," cf. *Love v. Pullman Co.,* 404 U.S. 522 [92 S.Ct. 616, 30 L.Ed.2d 679] (1972). "Pending" is simply not a term of art that unambiguously carries with it a meaning precisely suited for this situation; equally as logical, for example, would be an interpretation that read "pending" to mean "filed and not yet rejected."

That the Court limited its holding to the facts before it is understandable. In our judgment, however, the Court's logic can be extended to cases such as the one at bar, where the charge was filed within 180 days of the alleged discriminatory event and was

"pending" before the Commission on March 24, 1972—even though the charge did not allege a discriminatory occurrence within 180 days of March 24, 1972. To find otherwise would place too much emphasis upon the fortuity of the timing of an alleged discriminatory practice rather than the specifically stated Congressional desire to extend the 180 day period to "charges pending before the Commission on the date of the enactment of [the] Act." Accordingly, we hold that plaintiff's charge, filed with the EEOC within 180 days of the alleged discriminatory occurrence, and pending before the Commission on March 24, 1972, was timely.

### III.

Defendants' second asserted ground for dismissal is based upon plaintiff's failure to file this action within 90 days of the Commission's September 25, 1973 "Determination" that defendants "had not violated Title VII as charged."

Section 706(f)(1) of the Act, 42 U.S.C. § 2000e–5(f)(1) provides in pertinent part:

> If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or within 180 days from the filing of such charge . . . the Commission has not filed a civil action . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . shall notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved.

Defendants contend that plaintiff's action is time-barred since he did not file suit within 90 days of the Commission's adverse determination of September 25, 1973. Plaintiff counters that the 90 day period within which he must institute his suit began to run from December 9, 1975, the day he received a right-to-sue letter.

We note at the outset, that from the record presently before the Court, this does

not appear to be a case wherein the "two letter" procedure employed by the EEOC until April, 1975, see CCH LLR, Employment Practices ¶ 5318, is involved. Compare, e.g., *Webster v. Liberty Cash Grocers,* 409 F.Supp. 1002 (W.D. Tenn. 1975); *Turner v. Texas Instruments, Inc.,* 401 F.Supp. 1179 (N.D. Tex. 1975); *Wilson v. Sharon Steel Corp.,* 399 F.Supp. 403 (W.D. Pa. 1975); with *Roberts v. H. W. Ivey Construction Co.,* 408 F.Supp. 622 (N.D. Ga. 1975); *Stansell v. Sherwin Williams Co.,* 404 F.Supp. 696 (N.D. Ga. 1975); *Taylor v. Pacific Intermountain Express Co.,* 394 F.Supp. 72 (N.D. Ill. 1975). Rather, it appears that the only correspondence received by plaintiff containing instructions regarding his right to pursue a civil action, was the right-to-sue letter he received on December 9, 1975.

We recognize, of course, that there may be instances where a determination of dismissal by the Commission for lack of cause, unaccompanied by any instructional letter, may be sufficient to trigger the running of the 90 day statutory period, see, e.g., discussion in *DeMatteis v. Eastman Kodak,* 511 F.2d 306, 308 (2nd Cir. 1975), *modified on issue of retroactive application,* 520 F.2d 409 (2nd Cir. 1975). The "Determination" issued by the Commission herein, however, does not present such a case.

From the documentary evidence presented to the Court by plaintiff, and by the EEOC at this Court's request, it appears that the only material sent to plaintiff on September 25, 1973, was a three page document entitled "Determination," with no cover or explanatory letter enclosed.

The first seven paragraphs of the "Determination" deal directly with plaintiff's charge of employment discrimination, and conclude, based upon the evaluated evidence, that neither Respondent Employer nor Respondent Union had violated Title VII as charged. In the eighth and ninth paragraphs of the "Determination," however, the Commission embarked on what appears to be an unsolicited—though seemingly proper—evaluation of "Respondent Employer's under-utilization of minorities and females within its work force." (For convenience, we have appended a complete copy of the Determination as Appendix "A").

Following a statistical analysis of Penn Central's minority and female work force in comparison with the population of the Chicago area, the Commission concluded that "it is reasonable to infer that Respondent Employer maintains discriminatory hiring practices in violation of Title VII." In light of this latter conclusion, the Commission concluded its "Determination" by inviting "the parties to join with it in a collective effort toward a just resolution of this matter." No final statement or instructions were directed to plaintiff's claim of discriminatory discharge.

Apparently, this was the last plaintiff heard from the Commission until he received his right-to-sue letter on December 9, 1975. Though not specifically raised by plaintiff, it is conceivable to this Court that plaintiff was misled by the final two paragraphs of the Commission's "determination" to believe that though the original basis for his claim had been found to be lacking in merit, there remained some ground upon which to could be reinstated to employment through the Commission's conciliation efforts.

While we do not attribute to the Commission any intent to deceive or mislead plaintiff, we believe that a liberal construction of the remedial provisions of Title VII, see, e.g., *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F.2d 924, 929 (5th Cir. 1975); *Henderson v. Eastern Freight Ways, Inc.,* 460 F.2d 258, 260 (4th Cir. 1972) (per curiam), *cert. denied,* 410 U.S. 912, 93 S.Ct. 976, 35 L.Ed.2d 275 (1973), requires this Court to at least afford plaintiff an opportunity to further develop the record regarding his understanding and evaluation of the Commission's "Determination," and whether it impacted at that time upon his determination to pursue a civil action before this Court.

Plaintiff is therefore directed to file an affidavit and memorandum within 14 days of the date of this Memorandum Opinion,

and defendants may respond by way of affidavit or memorandum within 10 days of receipt of plaintiff's documents. The Court will then rule, as on summary judgment, under the provisions of Rule 12(b) F.R. Civ.P., on April 14, 1977 at 10:00 A.M.

## IV.

Assuming, *arguendo*, that the 90 day period within which plaintiff was required to file this action began to run upon his receipt of the right-to-sue letter, defendants assert that this cause should be dismissed for failure to file this action within the prescribed time.

Plaintiff received the Commission's right-to-sue letter on December 9, 1975, and submitted his *pro se* complaint and a petition to proceed *in forma pauperis* along with a supporting affidavit on March 8, 1976, one day before the expiration of the 90 day period. Pursuant to Local Rule 11(b) of this Court, plaintiff's complaint along with his pauper petition and affidavit were accepted by the Clerk's office, assigned a Civil Action number and forwarded to this Court for evaluation of the pauper affidavit. When, after the prescribed 7 day waiting period, no Order regarding plaintiff's application was issued by this Court, the Clerk of the Court entered an Order dated March 16, 1976, granting plaintiff's application to proceed *in forma pauperis*, pursuant to Rule 11(b), stamped plaintiff's complaint as "filed," and made an appropriate entry on the docket sheet. On March 18, 1976, this Court referred plaintiff's complaint to a Magistrate for purposes of appointment of counsel and the supervision of discovery.

Defendants contend that since plaintiff's complaint was not formally "filed" until March 16, 1976, his complaint was not timely. We disagree.

The vast majority of federal cases which have considered the question of the tolling of the limitations period within which lawsuits of this nature must be filed involved instances where plaintiff had only filed the notice of his right-to-sue, a copy of the Commission's determination and a motion for the appointment of counsel—but *not a*

*pro se* complaint. See, e.g., *Harris v. National Tea Co.*, 454 F.2d 307 (7th Cir. 1971); *Harris v. Walgreen's Distribution Center*, 456 F.2d 588 (6th Cir. 1972), and cases cited therein; *Reyes v. Missouri-Kansas-Texas R. R. Co.*, 53 F.R.D. 293 (D.Kan.1971). In each of those cases, and in light of the Supreme Court's stated policy of liberal interpretation of the procedural requirements in regard to layman-initiated proceedings under Title VII, e.g., *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972), the Courts held that the presentation of a request for appointment of counsel within the then specified 30 day period of § 703(e), (now 90 days under § 706(f)), constituted the bringing of a civil action under Title VII, tolled the limitations period until counsel was appointed, and required that a complaint be thereafter filed within the then applicable remaining statutory period.

Here, where within the 90 day period plaintiff not only presented the proper documentation evidencing his right to sue, but also submitted a *pro se* complaint setting forth his precise claim—and it was only because of internal administrative procedures that the actual "filing" was delayed—we have no doubt that plaintiff has satisfied the statutory requirement of § 706(f)(1), 42 U.S.C. § 2000e–5(f)(1), of initiating a civil action within 90 days.

That defendants did not receive notice of plaintiff's complaint until after an amended complaint had been filed by plaintiff's court appointed counsel—a matter which defendants do not allege to have resulted in any prejudice—is again the result of local court procedures, rather than the fault of plaintiff. Pursuant to local court practice, *pro se* plaintiffs in EEOC related cases are requested to sign a "Waiver of Issuance of Summons" which directs the Clerk of the Court not to issue summons until either plaintiff or the Court directs him to do so; except that if an amended complaint is filed, summons is directed to be issued immediately. This practice is apparently designed to filter out those cases which on their face lack merit so as not to require the

Marshal to serve summonses for frivolous lawsuits.

While we question the desirability of requesting *pro se* plaintiffs to sign such waivers—particularly in light of the lengthy delay in notice to defendants which may result—we cannot fault plaintiff for following the instruction and direction of the Clerk's office. We therefore hold that plaintiff's filing before this Court was timely.

V.

In light of the foregoing, we hold that plaintiff's charge before the EEOC was, pursuant to *Guy v. Robbins & Myers, supra,* presented in a timely manner and that plaintiff properly filed his complaint before this Court within 90 days of receipt of his right-to-sue letter. Accordingly, as to those two grounds, defendants' motion to dismiss is denied.

As to whether the 90 day period began to run from the date of the Commission's adverse determination or from the date of the receipt of the right-to-sue letter, we will await further presentations by the parties in accordance with the instructions contained in Section III, *supra,* and will decide the remainder of defendants' motion on April 14, 1977 at 10:00 A.M.

APPENDIX "A"

## EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

536 SOUTH CLARK STREET
CHICAGO, ILLINOIS 60605
TELEPHONE: 353–7550

Sep. 25, 1973
IN REPLY REFER TO:
Case No. <u>YCH4–049</u>
Charge No. TCHO–1487

Mayo Crook
1165 N. Milwaukee
Chicago, Illinois  60622                     Charging Party

vs.

Penn Central Transportation Co.
Union Station  Rm. 632
Chicago, Illinois  60606

and

U.T.U. Lodge 4
10511 S. Avenue 0
Chicago, Illinois  60617                     Respondents

## DETERMINATION

Under the authority vested in me by Section 1601.19(b) of the Commission's Procedural Rules, 37 Fed. Reg. 20165 (September 27, 1972), I issue on behalf of the Commission, the following determination as to the merits of the subject charge.

Respondents are an employer and labor organization, respectively, within the meaning of Title VII and the timeliness, deferral, and all other jurisdictional requirements have been met.

Charging Party alleges that Respondent Employer discharged him because of his race (Negro). Respondent Employer states that Charging Party was

discharged because he was cited by Respondent Union for non-payment of union dues.

Charging Party further alleges that Respondent Union acted in concert with Respondent Employer in his discriminatory discharge. Respondent Union states that it cited Charging Party for non-payment of union dues in accordance with the union contract.

The evidence of record demonstrates that Charging Party had failed to pay his union dues from June, 1969 to January, 1970 and that he was notified by the Union's Treasurer his delinquent payments and the possibility of termination if such payments were not paid. The record further demonstrates that the Respondent Employer sent the Charging Party two letters advising him of his possible termination and of his rights to appeal the matter, both of which were returned unclaimed.

Respondent Employer's records show that four employees (3 Blacks and 1 Caucasian) have been terminated for non-payment of union dues. Accordingly, we conclude that the treatment accorded Charging Party was no different than that accorded similarly situated employees and therefore Respondent Employer has not violated Title VII as charged.

The evidence of record further demonstrates that Respondent Union had attempted to collect delinquent dues from Charging Party and that the Respondent Union has cited 8 Caucasians and 4 Black members for non-payment of union dues. The record further demonstrates that one of the Caucasians was cited for only a two-month delinquency. Based on the foregoing, we conclude that Respondent Union has not violated Title VII because it has uniformly applied its citation policy for failure to pay union dues.

Like or related is Respondent Employer's under-utilization of minorities and females within its work force. For example, out of 1,933 employees, Respondent Employer employs only 154 Blacks, 19 Spanish-surnamed Americans and 99 females (all of whom are office and clerical except two who are service workers). Title VII permits the use of statistical probability to infer the existence of a pattern or practice of discrimination. The 1970 census reveals that the population of Chicago is approximately 51% female (41% of the labor force is female), 33% Black and 8% Spanish-surnamed American. In the absence of any legitimate explanation for the under-utilization of minorities and females in its work force, it is reasonable to infer that Respondent Employer maintains discriminatory hiring practices in violation of Title VII.

Having determined that there is reasonable cause to believe that Respondent has violated Title VII, the Commission now invites the parties to join with it in a collective effort toward a just resolution of this matter. We enclose an information sheet entitled "Notice of Conciliation Process" for the attention of each party. A representative of this office will be in contact with each party in the near future to begin the conciliation process.

On behalf of the Commission:

(s) Donald W. Muse, District Director