**Kathleen C. INDA, and Kathleen F. Moritz, Plaintiffs-Appellees,**

v.

**UNITED AIR LINES, INC., Defendant-Appellant.**

**Kathleen C. INDA, and Kathleen F. Moritz, Plaintiffs-Cross Appellants,**

v.

**UNITED AIR LINES, INC., Defendant-Cross Appellee.**

**Nos. 75–1527 and 75–2174.**

United States Court of Appeals, Ninth Circuit.

Nov. 28, 1977.

Donald D. Connors, Jr. (argued), of Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant-appellant.

Carole A. Hughes (argued), San Francisco, Cal., for plaintiffs-appellees.

Lutz Alexander Prager, Equal Employment Opportunity Commission as amicus curiae.

Before MERRILL and CHOY, Circuit Judges, and BONSAL,* District Judge.

MERRILL, Circuit Judge:

On October 18, 1972, Kathleen Inda and Kathleen Moritz filed this suit in the District Court for the Northern District of California, alleging that United Air Lines and the Air Line Pilots Association (ALPA) had discriminated against them on the basis of their sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. and § 1 of the Civil Rights Act of 1870, 42 U.S.C. § 1981. The alleged discrimination arose out of United's "no-marriage" rule which required female, but not male, flight cabin attendants to be single and to resign immediately or be terminated upon marriage.

The suit was filed by Inda and Moritz on behalf of themselves and all other women who, because of the no-marriage rule, had either been denied initial employment as stewardesses or had been forced to resign such positions. They sought a permanent injunction restraining United from engaging in such discriminatory employment practices and requiring United to reinstate with full seniority and benefits (including back pay) the named plaintiffs and all members of the class who had been forced to resign or who had been terminated because of the rule.

On January 8, 1973, United filed a Rule 12(b) motion to dismiss the action on the

* Honorable Dudley B. Bonsal, Senior United States District Judge for the Southern District of New York, sitting by designation.

ground that plaintiffs had failed to file timely charges with the Equal Employment Opportunity Commission (EEOC) and that the district court thus was without jurisdiction. The district court denied this motion.

On April 8, 1974, plaintiffs filed a Rule 23 motion for a preliminary determination that their action be permitted to go forward as a class action. The district court also denied this motion.

The § 1981 claim was dismissed by an order entered by the district court on July 11, 1974. The action against ALPA was dismissed by stipulation on November 18, 1974.

A court trial was then held on December 16, 1974, on the Title VII issue of whether Inda and Moritz had been forced to resign under the no-marriage rule or had voluntarily resigned. The district court found the plaintiffs would have continued to work but for the no-marriage rule. Hearings were subsequently held on the questions of damages and attorney fees. On January 30, 1975, the district court filed its findings of fact and conclusions of law. Judgment was rendered in favor of Inda in the sum of $41,917, and in favor of Moritz in the sum of $57,823, both sums plus interest. United was also ordered to reinstate both plaintiffs with full seniority from the dates on which they originally had been hired and to pay plaintiffs' attorneys' fees in the amount of $38,066.42.

Two major issues are presented on appeal. United's principal ground on appeal is that the plaintiffs did not file timely charges with the EEOC, a necessary precondition to suit by a plaintiff under Title VII. Inda and Moritz appeal from the denial of their motion for an order that the case proceed as a class action.

## APPEAL OF UNITED; TIMELY FILING OF CLAIMS WITH EEOC

Inda worked for United as a stewardess from December 29, 1965, to June 15, 1968, when she submitted her resignation because of her plan to marry. After resigning she was employed in a clerical ground position by United, from August, 1968, through August, 1969. Moritz worked for United as a stewardess from February 9, 1966, until March 5, 1968, when she resigned because of her plan to marry.

Both plaintiffs testified that they would not have resigned had the no-marriage rule not required it. Plaintiffs also testified that they had resigned because their supervisors had told them that if they did not resign they would be fired; and that under its hiring policy United would not rehire one who had been fired; and that if plaintiffs resigned and the rule requiring termination should be abandoned, they would have preference in being re-employed. Two of United's supervisors confirmed that such advice had been given.[1] Neither Inda nor Moritz filed a grievance with ALPA or a complaint with the EEOC or a state agency at the time of their forced resignation.

On November 7, 1968, eight months after Moritz's and five months after Inda's resignation, following negotiations with ALPA acting on behalf of United stewardesses, United adopted a new policy to the effect that marriage would not disqualify a stewardess from continuing to act as such.[2]

Under the new policy United still would not initially employ married women. Nor was the policy made to apply to those who had resigned and had not filed grievances

1. Cathy Coane stated: "I really believed that * * * if the rule were to be changed they would have a better chance to be re-employed." Sue Halstead Profilet stated: "We sincerely felt that when this policy would change that these girls would certainly be allowed to return to their jobs."

2. The letter agreement between ALPA and United stated in part:
"The Company agrees that marriage will not disqualify a Stewardess from continuing

in the employ of the Company as a Stewardess * * *.

All Stewardesses who have been terminated by the Company because of marriage and have filed a valid grievance protesting such policy, or who have as of this date filed a valid complaint before the Equal Employment Opportunity Commission or State Agencies, will be offered the opportunity to return to active Stewardess service."

or complaints. Instead of favoring those who had accepted company policy by openly disclosing their plans to marry and resigning, the new policy favored those who had chosen not to disclose the fact of marriage but to submit to being fired when that fact was discovered and who had then filed grievances or charges. Thus, the supervisors' representations on which Inda and Moritz had relied, despite the fact that they were given in all good faith, proved out to be false.

On November 14, 1968, one week after United had adopted this new policy, Moritz sought employment with United as a stewardess and Inda sought a transfer from her ground job with United to a position as a stewardess. Both were denied. Complaints were filed with the EEOC by Moritz on November 13, 1968, and by Inda on November 18, 1968.

Section 706(d) of the Civil Rights Act of 1964 (now 42 U.S.C. § 2000e–5(e)) at the time the charges were filed required the aggrieved person to file a charge with the Commission within 90 days after the alleged unlawful employment practice had occurred. Neither Inda nor Moritz met this requirement and United contends that their claims accordingly are barred.

### Tolling of the Ninety Day Statute

Appellants and the EEOC as amicus curiae have argued that the claims of both appellants were timely because other United employees had already filed complaints with the EEOC challenging the same policy of United. They contend that the complaints of Mary Sprogis, filed with the EEOC in August, 1966, *Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194 (7th Cir.), *cert. denied*, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971), and Carol Romasanta, filed in 1967, *Romasanta v. United Airlines, Inc.*, 537 F.2d 915 (7th Cir. 1976), *aff'd sub nom.*, *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977), made the filing of additional complaints by other aggrieved United stewardesses unnecessary and redundant. For support of this contention appellants and the Commission rely on language contained in *Albemarle Paper Co. v. Moody* 422 U.S. 405, 414 n. 8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). There the Supreme Court held that back pay could be awarded on a class basis under Title VII without exhaustion of administrative procedures by the unnamed class members. From this holding, appellants reason, either one of two results rationally follows: either (1) one need no longer file a charge with the EEOC in order to obtain a right to sue in one's own behalf once someone else has filed a charge based on the same violation; or (2) the time within which one must file an EEOC charge is tolled by the filing of such a charge by someone else.

We cannot agree that either result rationally flows from *Albemarle*.

■ Title VII painstakingly spells out the procedure by which one obtains a right to sue on his own behalf and the times within which certain steps must be taken. In *United Air Lines v. Evans*, 553 U.S. 431, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), the Supreme Court strictly enforced these provisions, holding that Evans' claim was barred by her failure to file a timely charge with the EEOC. *Albemarle* was not dealing with a right to sue; it dealt with class membership in a class action. It held only that relief can be awarded on a class basis to those who have suffered the same violation of Title VII, and that compliance with the procedural requirements by which one obtains a right to sue under Title VII is not essential to class membership. 422 U.S. at 414 n. 8, 95 S.Ct. 2362. In so holding the Court noted that decisions of courts of appeals were uniformly to this effect prior to the amendment of the Act in 1972, and that legislative history indicated congressional ratification of this view through enactment of the 1972 amendments. *Id.* Nothing in the amendments remotely suggests that Congress intended to eliminate the concept of a right to sue or to abolish the procedures by which one obtains such a right.

Nor does it follow from *Albemarle* that the filing of a charge by one person operates to toll the time within which another

person must file such a charge if a right to sue is to be obtained. *Albemarle* did not involve a tolling of the 90 day statute of limitations. The question was not one of timely filing; the question was whether a charge need be filed at all in order to enjoy membership in a class.

Some courts have suggested that the filing of a charge by one employee should toll the statute for all others who, at the time of the filing, could themselves have filed for the same violation, and that the statute should not again commence to run until the Commission had completed its efforts to mediate the dispute and had issued a right to sue letter or had dismissed the charge. *E.g., United States v. Georgia Power Co.,* 474 F.2d 906, 925 (5th Cir. 1973).

The analogy often relied on is *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). That case was an antitrust action where no analogous administrative proceeding precedes the suit. The tolling was of the time within which one must act on his own behalf in bringing suit for antitrust violation. The case held that a class action brought for antitrust violation tolls the statute as to all members of the class until the class is denied by the court and the class members are thus ejected from the suit. 414 U.S. at 561, 94 S.Ct. 756. The case proceeded on the theory that if one has a certain time within which to take certain action, action of that sort taken on his behalf by another within the time limit is timely taken and effectively protects one against the running of the statute until the representation is nullified by court action. The Court noted that by filing the class action the representative "notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." 414 U.S. at 555, 94 S.Ct. at 767.

Here, however, an employee, by filing an EEOC charge on his own behalf, is not acting on behalf of a class. As in the case of Sprogis (who sued only on her own behalf, *Sprogis v. United Air Lines, Inc.,* su-

pra, 444 F.2d 1194), he may never act on behalf of a class. Until he does so others cannot say that he has done for them that which is required of them by law.

The result is that timely filing of an EEOC charge is not a necessary condition to the obtaining of relief by one as a member of a class in whose behalf suit has been brought. However, if one brings suit on his own behalf, or as named plaintiff on behalf of a class, he must have secured a right to sue by timely following the procedures set forth in Title VII.

It does not follow that EEOC charges cannot be filed on behalf of a class. Title VII provides for such filing. Section 2000e–5(b) provides that a charge can be "filed by or on behalf of a person claiming to be aggrieved, or by a member of the Commission." Section 2000e–5(f)(1) provides that if the charge was filed by a member of the Commission any person whom the charge alleges was aggrieved by the unlawful employment practice should be notified of his right to bring a civil action. The EEOC Regulations provide:

"To come within the purview of this section an individual may either be specifically designated by name or be among the class of persons aggrieved by the practices complained of in the charge."

29 C.F.R. § 1601.25c(a). In cases involving Commissioner charges, "where the Commission has found reasonable cause but has been unable to obtain voluntary compliance with title VII, the Commission shall so notify the respondent and all identifiable members of the class." 29 C.F.R. § 1601.25c(c). This notice informs class members of their right to demand that a "Notice-of-Right-to-Sue" issue and to bring a civil suit. *Id.*

Thus, when a member of the Commission files on behalf of others, they can obtain their rights to sue without having filed on their own behalf. With such provisions in the Act we see no need to provide for additional class representation through judicial improvisation.

We conclude that the 90 day statute was not tolled by the filing of charges by others than Inda or Moritz.

*Other Timely Filing Issues*

Other factors enter into the question of timely filing, however. In 1972, Title VII was amended to extend the 90 day period to 180 days. 86 Stat. 103 (Mar. 24, 1972), 42 U.S.C. § 2000e–5(e). Section 14 of the amendments, 86 Stat. 113, provides:

"The amendments made by this Act to section 706 of the Civil Rights Act of 1964 shall be applicable with respect to charges pending with the Commission on the date of enactment of this Act and all charges filed thereafter."

Inda's charge filed November 18, 1968, as to a violation occurring on June 15, 1968, was filed within 180 days. Moritz's charge, filed November 13, 1968, as to a violation occurring March 5, 1968, was not filed within 180 days. It was, however, filed within 90 days of the denial of employment on November 14, 1968, and was timely if such denial can be regarded as a separate violation, independent of the earlier one.

United's contention that the charges were not timely filed thus presents different issues in the two cases. As to Inda, the question is whether the charge filed November 18, 1968, was "pending with the Commission on [March 24, 1972], the date of enactment of the Act." As to Moritz, the question is whether the denial of employment on November 14, 1968, was itself a separate violation independent of the earlier one or was simply a reassertion of the time-barred earlier violation.

### (a) *Inda's Charge*

*Electrical Workers Local 790 v. Robbins & Myers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), considered the meaning of the language, "pending with the Commission" as used in the 1972 Act. In that case a charge had been filed more than 90 days but less than 180 days after the charged violation. The employer contended that since the charge was untimely when filed it could not have been pending with the Commission when the Act was enacted. The court rejected this contention. It stated:

"This reading of 'pending'—confining it to charges still before the Commission and timely when filed—is not the only possible meaning of the word, is largely rebutted by the legislative history, and renders the language of § 14 virtually meaningless insofar as the enlarged limitations period is concerned. Since Congress also applied the enlarged limitations period to charges, whether or not untimely on March 24, 'filed thereafter,' we should not presume Congress created this odd hiatus in retroactivity suggested by Robbins & Myers unless congressional intent to do so was conveyed by language more precise than 'pending,' cf. *Love v. Pullman Co.*, 404 U.S. 522, [92 S.Ct. 616, 30 L.Ed.2d 679] (1972). 'Pending' is simply not a term of art that unambiguously carries with it a meaning precisely suited for this situation; equally logical, for example, would be an interpretation that read 'pending' to mean 'filed and not yet rejected,' cf. Committee Legis. Hist., *supra*, n. 16, at 1851."

429 U.S. at 242–43, 97 S.Ct. at 450.

The precise holding of the Court in *Electrical Workers* was as follows:

"We hold that Congress intended the 180-day period to be applicable to charges such as that filed by Guy, where the charge was filed with the EEOC prior to March 24, 1972, and alleged a discriminatory occurrence within 180 days of the enactment of the Act."

*Id.* at 243, 97 S.Ct. at 450. The Court added, in note 17:

"Accordingly, we need not decide whether the enlarged limitations period also redounds to the benefit of persons who filed a charge more than 90, but less than 180, days from the date of the alleged 'occurrence,' where the 180 days had run prior to March 24, 1972."

*Id.*

The question so reserved by the Court is the one before us: Whether *Electrical Workers* must be held to its facts, *i. e.,* whether the fact that the discriminatory action occurred within 180 days of the enactment of the Act is crucial. We hold that

it is not. *Accord, Crook v. Penn Central Transportation Co.*, 427 F.Supp. 956, 958–59 (N.D.Ill.1977); *Dickerson v. U.S. Steel Co.*, 439 F.Supp. 55, 69 n. 11 (E.D.Pa.1977). If the charge was, on the date of enactment, on file with the Commission, and if final action had not yet been taken by the Commission with respect to the charge, the charge was pending in the sense in which that term is commonly used. It is that sense that we have attributed to Congress.

■ Inda filed her charge against United with the Commission on November 18, 1968. On December 22, 1970, the Commission issued a decision concluding that there was reasonable cause to believe that United had engaged in unlawful employment practices. The issuance of that decision did not terminate the jurisdiction of the Commission on the charge, but led to a period during which there were efforts to obtain conciliation and voluntary compliance. *See, Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 358–364, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Cunningham v. Litton Industries*, 413 F.2d 887, 890 (9th Cir. 1969). On October 16, 1972, the Commission issued a notice of right to sue to Inda. Under the test set forth above, Inda's charge was still pending before the Commission on March 24, 1972, when the amendments were enacted.

We conclude that Inda's charge was timely filed as to the June 15, 1968, violation and that judgment of the district court should be affirmed in that respect.

(b) *Moritz's Charge*

As we have noted, Moritz did not file her charge with the EEOC within 180 days of her discharge and her action was not timely under our interpretation of the 1972 amendments. The question as to this charge, therefore, is whether the denial of employment on November 14, 1968, constituted a separate and independent violation which, standing alone, would support a charge of unfair employment practice.

In *Collins v. United Air Lines, Inc.*, 514 F.2d 594 (9th Cir. 1975), this court dealt with the question whether denial of reinstatement is an offense separate from the original discharge. That case involved the same employer and the same no-marriage rule involved here. That case also involved an involuntary resignation in the face of the rule, and a rejection of an application for reinstatement made after the 1968 change in company policy. We held the application to be untimely, rejecting the appellant's contentions in the alternative that the initial violation was a continuing one and that the denial of reinstatement was an independent violation. We quoted from *NLRB v. Textile Machine Works*, 214 F.2d 929, 932 (3d Cir. 1954):

> " 'A discharged employee who seeks to be *reinstated* is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer.' "

514 F.2d at 596–97.

*Collins* was, however, quite a different case factually from this one. Collins had resigned in May, 1967. Four-and-one-half years later, in October, 1971 (three years after the 1968 change in company policy), she applied for reinstatement "to full status as stewardess, with full seniority and back pay." After being denied reemployment, she promptly filed charges with EEOC in November, 1971. Nothing is said in the opinion as to any company inducement to secure resignation, nor as to any circumstances that would render the initial violation a continuing one or the denial of reinstatement an independent violation. One can readily infer, in absence of some explanation for the delay, that the application for reinstatement was made for the sole purpose of serving as a sham basis for a tardy EEOC charge directed at the initial resignation.

■ Our case is distinguishable from *Collins*. Here plaintiffs acted with exemplary promptness. Only one week elapsed (as against Collins' delay of three years) after announcement of the rule change before both plaintiffs applied for re-employment. Here new elements of unfairness, not exist-

ing at the time of the original violation, attached to denial of re-employment, and it cannot be said, as it was in *NLRB v. Textile Machine Works, supra,* that the discrimination attaching to the original discharge was the only basis for reinstatement. While no fault could be said to have attached to the making of good faith representations as to future hiring preferment, inequity did arise from United's failure to protect those who had relied upon the company representations. Under these circumstances equitable principles analogous to those of estoppel demand that United honor the representations relied on by plaintiffs to their detriment. Failure to do so renders the denial of re-employment an independent breach of duty, sharing with the original termination its nature as a discrimination on the basis of sex and thus a violation of the Act, as to which violation the EEOC charges were timely filed by Moritz.

The substance of the representation to which we hold United was that should the no-marriage rule be terminated those stewardesses who had, because of the rule, resigned would be re-employed. It was the company's failure to re-employ Moritz on November 14, 1968, that constituted the violation in her case. The relief to which she is entitled must then be directed to that violation rather than to the earlier time-barred violation. The district court awarded back pay to the earlier violation. This we hold to be error. The judgment in Moritz's favor should be modified to award back pay to the November 14, 1968, violation and adjust seniority accordingly.

### *Mitigation of Damages; Attorney Fees*

■ Attacking the damages awarded to both appellees as excessive, United contends that there was no substantial evidence that either Inda or Moritz had made reasonable efforts to mitigate damages by diligently pursuing other employment.[3] The record contains credible testimony as to the efforts made. The question is as to the degree of

diligence that should be required and the promptness with which plaintiffs should be required to have abandoned efforts to secure employment in their chosen field and to have sought employment in other fields. We note again that only five months elapsed in the case of Inda, and eight months in the case of Moritz, between resignation and application for re-employment. In our judgment the court's findings in these respects were not clearly erroneous.

We find no merit in United's contention that the attorneys' fees awarded Inda and Moritz were excessive.

### APPEAL OF INDA AND MORITZ; PROPRIETY OF CLASS ACTION

■ In denying appellants' motion for an order that the action continue as a class action under Rule 23, Federal Rules of Civil Procedure, the district court entered an order as follows:

"Plaintiff's Motion to Determine Class and Motion That The Action Continue As A Class Action came on for hearing on May 17, 1974, and the Court having heard the arguments of counsel, having read the memoranda on file, and being fully advised in the premises now ORDERS that Plaintiffs' Motion to Determine Class be, and it hereby is, denied; and FURTHER ORDERS that Plaintiffs' Motion That The Action Continue As a Class Action be, and it hereby is, denied."

From this order we have no way of knowing the ground upon which the court acted and thus no way of reviewing the propriety of that action.

In *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974), we held that a trial court, "in determining whether or not the case should proceed as a class suit, should make certain findings as to the Rule's provisions and their application to the case at bar." In the case before us the trial court should, at the least, state the reasons for denial with such specificity that findings can be supplied by implication.

---

**3.** 42 U.S.C. § 2000e-5(g) provides in part: "Interim earnings or amounts earnable with reasonable diligence by the person or persons

discriminated against shall operate to reduce the back pay otherwise allowable."

United argues that *Price* was decided after the district court's decision denying plaintiffs' motion to permit their action to proceed as a class action and that *Price* should not be given retroactive effect. But in *Price* we noted that the need for findings by the trial court was implicit in prior cases and Rule 23 itself. *Id.* at 1170. Thus, the holding of *Price* is applicable to this case. *See generally United States v. Bowen,* 500 F.2d 960, 975 (9th Cir. 1974) (Part II, Wallace, J.) aff'd, 422 U.S. 916, 95 S.Ct. 2569, 45 L.Ed.2d 641 (1975).

United points out that in *Price* there was no record other than the complaint, answer and motion to dismiss; it asserts that here there is such a record and that from examination of it grounds for denial of class action status clearly appear. Thus, we are asked not to determine whether a specific basis for denial finds support in the record, but to determine in the first instance whether or not existence of a ground is to be found in the record. In our judgment basis for denial does not appear from the record with the clarity United attributes to it. For us to make the necessary determination we would have to deal with subsidiary questions requiring resolution of factual disputes or exercise of discretion—judicial actions which are not appropriately a part of the appellate function.

We conclude that the order denying class action status must be vacated and the matter remanded for entry of a sufficiently explicit order. The district court is at liberty, within its discretion, to entertain further hearing on the question. Much has happened since the order in question was entered. The Supreme Court has handed down decisions involving the same no-marriage rule and related issues and may have clarified the law in some relevant respects.[4] A class, possibly with the same members, has been certified in another action against United, *Romasanta v. United Airlines, Inc., supra,* 537 F.2d at 919–20. More information respecting the proposed class may have become available, and a redefinition of the class may have become appropriate. We make no suggestions in any such respects, but offer the district court a free hand in extending or limiting the area of inquiry and in entertaining motions with respect to it.

Upon the appeal of United, judgment in favor of Inda is affirmed; judgment in favor of Moritz is vacated and the matter remanded with instructions to modify the award of back pay to run from November 14, 1968, and to adjust seniority to conform with re-employment as of that date. Upon the appeal of Inda and Moritz, the order denying class status is vacated and the matter remanded for further proceedings. Costs are awarded to Inda and Moritz.

---

4. *United Air Lines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Franks v.* *Bowman Transportation Co.,* 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).