4 F.3d 805
 UNITED STATES of America, Plaintiff,
v.
PRESIDIO INVESTMENTS, LTD., Defendant.
Edward SANDQUIST, Defendant-Appellee,
v.
Janet BLAIR, Applicant in Intervention-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
PRESIDIO INVESTMENTS, LTD., Defendant.
Edward SANDQUIST, Defendant-Appellee,
v.
Janet BLAIR, Applicant in Intervention-Appellant.
 Nos. 92-15176, 92-15254.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 13, 1993.
Decided Sept. 10, 1993.
 
 Thomas J. Henderson, Lawyers' Committee for Civil Rights Under Law, Washington, DC, for applicant in intervention-appellant.
 Richard C. Henry, Tucson, AZ, for defendant-appellee.
 Appeal from the United States District Court for the District of Arizona.
 Before: REINHARDT, TROTT, and RYMER, Circuit Judges.
 TROTT, Circuit Judge:
 
 
 1
 Appellant Janet Blair appeals the district court's grant of summary judgment against the original plaintiff (the United States of America), and in favor of Presidio Investments, Ltd. ("Presidio Investments") and Edward Sandquist. The government on behalf of appellant alleged that Edward Sandquist, her landlord, discriminated against her on the basis of her sex in violation of the Fair Housing Act, as amended. See 42 U.S.C. Secs. 3610-3619. Basing its decision on its conclusion that the 1988 Amendments to the Fair Housing Act in their entirety were not retroactive, the district court held: 1) the Department of Housing and Urban Development ("HUD") investigation was not a pending action for purposes of filing the instant action when the 1988 Amendments to the Fair Housing Act became effective; 2) that to allow the government to proceed with the prosecution of this case would be to interpret the 1988 Amendments to apply to virtually any preexisting or pending action; and, 3) that because the complaint was filed on behalf of an individual, the matter was not of "great national concern," and thus to apply the 1988 Amendments "retroactively" would result in "manifest injustice." Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) ("[A] court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary."). The district court concluded that the amendments to the Fair Housing Act should not, therefore, be retroactively applied, and accordingly, it ordered the case dismissed. The district court had jurisdiction pursuant to 28 U.S.C. Sec. 1345 (1988) and 42 U.S.C. Sec. 3612(o) (1988). We have jurisdiction over this timely appeal pursuant to 28 U.S.C. Sec. 1291 (1988). Because we hold that the case was pending at the time the 1988 amendments became effective, and because the amendments at issue involve only procedural and remedial changes in the law, leaving appellees substantive rights unaltered, we reverse.
 
 
 2
 * In September of 1987, appellant Janet Blair moved into the Presidio Apartments managed and partially owned by appellee Edward Sandquist. Blair was subsequently subjected to a number of unwanted sexual advances by Sandquist in which he grabbed and kissed her. The third and most egregious of these advances occurred in late December, 1987 when Sandquist grabbed Blair and pinned her arms behind her back. While squeezing her neck and forcing her face upwards with his left hand, Sandquist forcibly kissed her, cutting her lip and bruising her neck. Pursuant to a criminal complaint filed by Blair, on December 2, 1988, Sandquist was convicted for assault in city court.
 
 
 3
 On April 30, 1988, Blair filed a complaint with HUD alleging sex discrimination by appellees Presidio Investments and Sandquist. She alleged that because she had filed a complaint against him, Sandquist had retaliated against her by: 1) demanding entry into her apartment on January 23, 1988 and threatening her with eviction if she did not comply; 2) refusing on April 7, 1988 to activate her air conditioning unit while activating all other units in the complex; 3) turning off the pilot light to her hot water heater on April 9, 1988; and, 4) attempting to have Blair arrested on false charges that she had stolen the drapes from the apartment after she vacated it.
 
 
 4
 At the time of these incidents, the Fair Housing Act of 1968 was in effect. The Act provided that victims of housing discrimination could file an administrative complaint with HUD within 180 days after the alleged discriminatory housing practice had occurred. See Fair Housing Act of 1968, Sec. 810, 82 Stat. 81, 85 (codified at 42 U.S.C. Sec. 3610 (1982)). Accordingly, Blair's administrative complaint was timely filed under the 1968 Act, pursuant to which an array of enforcement mechanisms to address prohibited discriminatory practices was then available, i.e., informal methods of conference, conciliation, and persuasion, 42 U.S.C.A. Sec. 3610(a); a private right of action, 42 U.S.C.A. Sec. 3610(d); and a "pattern or practice" lawsuit by the government, 42 U.S.C.A. Sec. 3614.
 
 
 5
 While HUD was investigating Blair's complaint, Congress passed the Fair Housing Amendments Act of 1988 on September 13, 1988. Fair Housing Amendments Act of 1988, 102 Stat. 1619 (codified as amended at scattered sections of 42 U.S.C.). Under the 1988 Act, HUD received new enforcement authority. The 1988 Act provides that: (1) HUD prepare a final investigative report and determine whether reasonable cause exists to believe that a discriminatory housing practice has occurred, 42 U.S.C. Secs. 3610(b)(5), 3610(g) (1988); (2) if HUD makes an affirmative reasonable cause determination, as it did in the instant case, it must issue a charge against the respondent on behalf of the aggrieved person, and the charge initiates legal proceedings before an Administrative Law Judge 42 U.S.C. Sec. 3610(g)(2)(A) (1988); or (3) in the alternative, after such a charge, either party may elect to have the claims adjudicated in a federal civil action, 42 U.S.C. Sec. 3612(a) (1988), and if such election is made, HUD must authorize the Attorney General to commence and maintain a civil action on behalf of the aggrieved person, 42 U.S.C. Sec. 3612(o) (1988). No longer was the government limited to filing a traditional "pattern or practice" lawsuit.
 
 
 6
 The Amendments went into effect on March 12, 1989. 42 U.S.C. Sec. 3601 (1988). Significantly, at that time, HUD was still processing Blair's complaint. HUD had not determined whether to attempt to resolve the complaint nor had HUD attempted to conciliate the complaint. See 42 U.S.C. Sec. 3610(a) (1982).
 
 
 7
 After the effective date of the 1988 Amendments, HUD processed the complaint under the Fair Housing Act, as amended in 1988. On April 7, 1989, HUD decided to attempt to resolve the complaint and scheduled a conciliation conference for April 27, 1989, a procedure provided for by the original act and the 1988 Amendments. See 42 U.S.C. Sec. 3610(a) (1982); 42 U.S.C. Sec. 3610(b) (1988). Later, HUD prepared a Final Investigative Report pursuant to the 1988 Amendments. See 42 U.S.C. Sec. 3610(b)(5) (1988). On December 13, 1989, after conciliation failed, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against Presidio Investments and Sandquist pursuant to the 1988 Amendments. See 42 U.S.C. Sec. 3610(g) (1988).
 
 
 8
 Sandquist elected to have the charges resolved in federal court pursuant to 42 U.S.C. Sec. 3612(a) (1988). The Secretary of HUD then authorized the Attorney General to file this action on behalf of Blair on February 2, 1990, a new enforcement procedure only available under the 1988 Amendments. See 42 U.S.C. Sec. 3612(o)(1) (1988).
 
 
 9
 In its complaint, the United States alleged that Sandquist discriminated against Blair on the basis of her sex in violation of 42 U.S.C. Sec. 3604(b) (1982) by subjecting her to sexual harassment during her tenancy at the Presidio Apartments. Sandquist moved for dismissal arguing that: 1) Blair should originally have filed suit on her own behalf pursuant to the 1968 Act, 42 U.S.C. Sec. 3610(d) (1982), while HUD continued its investigation; 2) the government did not have the right to file suit on Blair's behalf under the 1968 Act; and, 3) the 1988 Amendments did not apply to the action because Sandquist's alleged discriminatory actions had occurred prior to the effective date of the 1988 Amendments.
 
 
 10
 The district court treated Sandquist's motion to dismiss as a Motion for Summary Judgment and held in favor of Sandquist pursuant to Fed.R.Civ.P. 56. Blair sought, by pro se motion, to intervene in the action pursuant to 42 U.S.C. Sec. 3612(o)(2) (1988) and sought appointment of counsel pursuant to 42 U.S.C. Sec. 3613(b) (1988). The district court denied Blair's motion.
 
 
 11
 The United States filed a Notice of Appeal from the district court's adverse judgment. The United States then reversed its field and sought to withdraw its notice of appeal, prompting Blair again to file a motion to intervene with the district court. Two days later, Blair filed a motion with this court to intervene in the government's appeal.
 
 
 12
 We granted the United States's motion to dismiss its appeal on March 10, 1992, but later, acting on Blair's motion, we reinstated the appeal. In so doing, we also granted Blair's motion to intervene and to substitute her for the United States in the appeal.[1] We then stayed appellate proceedings pending the district court's entry of findings of fact and conclusions of law which it has now completed in a Memorandum Decision entered on July 31, 1992.
 
 II
 
 13
 We review a grant of summary judgment de novo. T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n, 809 F.2d 626, 629 (9th Cir.1987). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. Tzung v. State Farm Fire and Casualty Co., 873 F.2d 1338, 1339-40 (9th Cir.1989).
 
 III
 
 14
 The district court ruled that "the HUD investigation was not a pending action for purposes of filing the present action." As we now explain, we respectfully disagree with this conclusion.
 
 
 15
 Regrettably, the district court gave no factual or legal explanation for its ruling. This court has held, however, that for purposes of applying a newly enacted statute, an action is pending "[i]f the [administrative] charge was, on the date of enactment, on file with the Commission, and if final action had not yet been taken by the Commission with respect to the charge...." Inda v. United Air Lines, Inc., 565 F.2d 554, 561 (9th Cir.1977), cert. denied, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978). See also, Electrical Workers Local 790 v. Robbins & Meyers, Inc., 429 U.S. 229, 241-44, 97 S.Ct. 441, 449-451, 50 L.Ed.2d 427 (1976); Osmundsen v. Todd Pacific Shipyard, 755 F.2d 730, 731-32 (9th Cir.1985); Bratton v. Bethlehem Steel Corp., 649 F.2d 658, 666 (9th Cir.1980).
 
 
 16
 At the time of the alleged discriminatory incidents, the Fair Housing Act of 1968 was in effect. Under the Act of 1968, victims of housing discrimination could file an administrative complaint with the Secretary within 180 days after the alleged discriminatory housing practice occurred pursuant to 42 U.S.C. Sec. 3610 (1982). Accordingly, Blair filed a complaint on April 30, 1988 with HUD. The district court found that "[t]he third and most serious physical sexual advance occurred in December 1987...." Id. The district court found further that "[a]fter the December 1987 assault, Sandquist took retaliatory action in January, April and June of 1988 against Blair related to her tenancy." Id. Thus, we first hold, based on these factual findings, that Blair's complaint was timely filed with HUD because it was filed within 180 days of the alleged discriminatory practices.
 
 
 17
 After receiving Blair's complaint, HUD began its investigation as required by the provisions of the 1968 Act. HUD investigators interviewed witnesses and took written statements throughout the summer of 1988. Appellee Sandquist admits that HUD's investigation extended until November 8, 1988. The record reflects that the file remained active with HUD requesting files from the Washington D.C. office and telephoning Blair to obtain information through the end of February, 1989.
 
 
 18
 Congress passed the Fair Housing Amendments Act of 1988 on September 13, 1988. The Amendments went into effect on March 12, 1989, and HUD then began processing the complaint pursuant to the Fair Housing Act, as amended in 1988. On April 7, 1989, HUD decided to attempt to resolve the complaint and scheduled a conciliation conference for April 27, 1989. Both the 1968 Act and the 1988 Act provide for this procedure. 42 U.S.C. Sec. 3610(a) (1982) and 42 U.S.C. Sec. 3610(b) (1988). HUD later prepared a final investigative report pursuant to Sec. 810(b)(5) of the 1988 Act. See 42 U.S.C. Sec. 3610(b)(5). On December 13, 1989, after conciliation failed, HUD issued a Determination of Reasonable Cause and Charge of Discrimination against Presidio Investments and Sandquist pursuant to Sec. 810(g) of the 1988 Act. 42 U.S.C. Sec. 3610(g). On January 6, 1990, Sandquist elected to have the charges resolved in a federal civil action pursuant to Sec. 812(a) of the 1988 Act. See 42 U.S.C. Sec. 3612(a). At no time did Sandquist claim he was not subject to the new law. In fact, his election to proceed as he did permitted him to proceed in a way that was not available to him under the 1968 Act. On January 16, 1990, the United States received authorization from the Secretary and filed this action on February 2, 1990 pursuant to Sec. 812(o) of the 1988 Act. See 42 U.S.C. Sec. 3612(o).
 
 
 19
 Blair's timely filed complaint was on file with HUD and HUD had not yet taken final action with respect to the charge when the 1988 Act went into effect on March 12, 1989. Thus, based on an analysis of the processing of the complaint, we hold that Blair's complaint was "pending" when the 1988 Act took effect. See Inda, 565 F.2d at 561.[2]
 
 IV
 
 20
 The district court granted summary judgment to Sandquist and Presidio Investments on the ground that the government could not proceed against them pursuant to 42 U.S.C. Sec. 3612(o) (providing that the Attorney General will commence a civil action on behalf of the aggrieved person in a United States district court) because the 1988 Amendments could not be applied to the case. The 1988 Amendments at issue, however, merely provided the government with an additional method to enforce substantive rights and responsibilities already on the books since 1968. See 42 U.S.C. Sec. 3612(o).
 
 
 21
 The procedures of which Blair seeks to take advantage are quite similar to the new procedures of which Sandquist took advantage in electing to have the charges resolved in federal court rather than by HUD. The procedures themselves did not affect the dimensions of the underlying charges. The conduct at issue if proved was unlawful and actionable both before and after the 1988 Amendments. Moreover, the Federal Regulations also consider the 1990 amendments to be only procedural. 54 Fed.Reg. at 3259 (1989) states, "Because new remedies and enforcement procedures do not affect vested rights, retroactive application is entirely appropriate." 24 C.F.R. Ch 1, Subch A., app. I, Sec. 103.1 at 909. HUD's interpretation of the statute is entitled to deference. Gladstone v. Village of Bellwood, 441 U.S. 91, 107, 99 S.Ct. 1601, 1612, 60 L.Ed.2d 66 (1979).
 
 
 22
 Because HUD was actively investigating Sandquist at the time the 1988 Amendments became effective, appellees knew they faced potential consequences. At a minimum, appellees knew they faced a possible adverse determination and the possibility that the ensuing conciliation agreement might require the payment of damages. We are unable to find any manifest injustice in this set of facts or any substantive rights of which Sandquist is being deprived.
 
 
 23
 It is well established that " 'when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases.' " Nichols v. Stapleton, 877 F.2d 1401, 1403 (9th Cir.1989) (quoting Friel v. Cessna Aircraft Co., 751 F.2d 1037, 1039 (9th Cir.1985). See also Kruso v. International Telephone & Telegraph Corp., 872 F.2d 1416, 1425 (9th Cir.1989) (Section 1016(a) of the Judicial Improvements and Access to Justice Act of 1988 providing that the naming of Doe defendants no longer defeats diversity jurisdiction is procedural and therefore applies to cases pending on the effective date), cert. denied, 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990); Delta Computer Corp. v. Samsung Semiconductor & Telecommunications Co., 879 F.2d 662 (9th Cir.1989) (New section of the Federal Arbitration Act, 9 U.S.C. Sec. 15, providing that an appeal could not be taken from an interlocutory order is procedural and therefore is applied retroactively).
 
 
 24
 We therefore hold that the 1988 Amendments at issue in the present case, providing the government with only additional enforcement remedies and procedures, apply to cases pending at the time of the effective date of the 1988 Amendments.[3] Thus, the government's case against Sandquist and Presidio Investments was properly before the district court, and the district court improperly granted summary judgment to Sandquist and Presidio Investments. We therefore reverse and remand for proceedings consistent with this opinion.
 
 
 25
 REVERSED.
 
 
 
 [1]
 Blair argues on appeal that the district court erred in denying her motion to intervene. The Fair Housing Amendments Act of 1988 permits an aggrieved party to intervene as of right in suits brought by the government on their behalf. Section 812(o)(2) of the Act, 42 U.S.C. Sec. 3612(o)(2), provides, "Any aggrieved person with respect to the issues to be determined in a civil action under this subsection may intervene as of right in that civil action." Thus, Blair's motion to intervene falls squarely within the provision of Fed.R.Civ.P. 24(a)(1) providing for intervention as of right "when a statute of the United States confers an unconditional right to intervene" and the district court erred in denying Blair's motion. Thus, we granted Blair's motion to intervene on appeal and to substitute herself for the United States as appellant. On remand, Blair will be permitted to proceed in the district court proceedings in the place of the United States
 
 
 [2]
 Sandquist argues that HUD deliberately delayed the processing of Blair's complaint in anticipation of the 1988 Act. He maintains there must be some demonstrated good faith reason for delay keeping the case in "pending" status. Sandquist does not, however, cite any authority for this proposition. Moreover, the district court made no finding that HUD acted in bad faith in processing the claim. We therefore reject Sandquist's argument that HUD deliberately delayed the processing of Blair's complaint
 
 
 [3]
 We are aware of the unsettled nature of the Supreme Court's views on retroactivity which loom menacingly over this case. See Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990) (recognizing that Bradley v. Richmond School Board, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016 (1974) and Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988) are in "apparent tension"); FDIC v. New Hampshire Ins. Co., 953 F.2d 478, 486 (9th Cir.1991). We assume that at some future time clearer guidance will be available