Liane Buix McDONALD,
Plaintiff-Appellant,

v.

UNITED AIR LINES, INC.,
Defendant-Appellee.

Liane Buix McDONALD,
Plaintiff-Appellee,

v.

UNITED AIR LINES, INC.,
Defendant-Appellant.

Nos. 78–1699, 78–2035.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1978.

Decided Nov. 21, 1978.

Rehearing and Rehearing In Banc
Denied Jan. 25, 1979.

---

358

Thomas R. Meites, Lynn Sara Frackman and Kenneth N. Flaxman, Chicago, Ill., for plaintiff-appellant.

Paul E. Meringoff, EEOC, Washington, D. C., amicus curiae for plaintiff.

Stuart Bernstein, Mayer, Brown & Platt, Chicago, Ill.

Before CUMMINGS, Circuit Judge, WISDOM, Senior Circuit Judge,* and SPRECHER, Circuit Judge.

CUMMINGS, Circuit Judge.

These consolidated interlocutory appeals raise two questions regarding the proper definition of the class of stewardesses entitled to relief for the loss of their employment with defendant airline because of its prior no-marriage rule. The rule was invalidated under Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e–2(a)(1)) in *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir. 1971), certiorari denied, 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543.

While some married stewardesses were terminated by the defendant, others resigned involuntarily because of the no-marriage rule. See *United Air Lines v. Evans,* 431 U.S. 553, 554, 97 S.Ct. 1885, 52 L.Ed.2d 571. The plaintiff now argues that the scope of the class as defined by the district court is too narrow, whereas the defendant approves the scope of the class as certified but argues that the statute of limitations bars relief for many or all of the class members. We have accepted both questions on interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

*Scope of Class*

Subsequent to *Sprogis,* which had proceeded as an individual action, Carole Ro-

---

* The Honorable John Minor Wisdom, Senior Circuit Judge of the United States Court of Appeals for the Fifth Circuit, is sitting by designation.

masanta brought the present case as a class action, but the district court struck the class allegations.[1] The *Romasanta* plaintiffs sought an interlocutory appeal of this denial of class certification, but this Court refused to accept the appeal. After judgment, the prevailing plaintiffs refused to appeal the denial of class status, which had then become appealable. Thereafter we permitted Liane McDonald to intervene to prosecute an appeal from the adverse class determination and reversed the denial of class relief. *Romasanta v. United Airlines, Inc.*, 537 F.2d 915 (7th Cir. 1975), affirmed *sub nom. United Airlines v. McDonald*, 432 U.S. 385, 97 S.Ct. 2464, 52 L.Ed.2d 423.[2]

On remand, the district court determined on January 11, 1978, that the class would consist of all women who were employed by United as stewardesses and who resigned or were terminated because of United's no-marriage policy between July 2, 1965, the effective date of Title VII of the Civil Rights Act of 1964, and November 7, 1968, when the no-marriage rule was abolished. However, on March 1, 1978, without explanation the court vacated that class order and narrowed the class to include only those women who were discharged between those dates, thus excluding those who resigned under United's no-marriage rule in contemplation of marriage. We hold that the district court's January 11, 1978, class determination was correct and that its subsequent order narrowing the class was improper.

Apparently the district court modified the class definition in response to United's motion to reconsider the January 11 order, in which United argued for the narrower class. United's basic argument, both before the district court and here on appeal, was that the *Romasanta* plaintiffs had never before sought the broader class, and therefore Mrs. McDonald was estopped to do so now. This argument involves lengthy disputes about the relevance of and the proper interpretation of various pleadings and supporting documents in the complicated history of this case.[3] In large part, the argument turns on whether the term "discharged" was used in certain of those papers as a term of art meaning any involuntary termination of employment or as the equivalent of "fired." We do not find this line of inquiry instructive. The various parties seem to have had different interpretations of the class in mind, and the scope of the class was never clarified in any of the earlier phases of the case in large part because class status was consistently denied.

Pettifogging about the prior pleadings is not decisive anyway, for the stewardesses

---

1. Prior to refusing to certify a class in *Romasanta,* the district court had denied the plaintiffs' motions to consolidate *Sprogis* and *Romasanta.*

2. In *McDonald*, the Supreme Court agreed with us that Mrs. McDonald's motion to intervene was timely and should have been granted by the district court. No other question was before the high court.

3. United argues that the original *Romasanta* plaintiffs had sought a class composed of all stewardesses who were "discharged by United pursuant to its no-marriage policy" and all "stewardesses who resigned from their employment upon marriage * * * and who have complained against United's no-marriage rule by filing grievances * * * or charges under Title VII * * *" (Br. 18). United contends that it had persuaded the district court, when it first denied class designation in *Romasanta,* to apply the protest requirement not merely to employees who resigned, but also to those who were terminated by United. (This resulted in a

group of plaintiffs too small to proceed as a class. Hence the qualifying plaintiffs were allowed to intervene and class status was denied.) It was only this extension of the protest requirement to terminated employees, according to United, which was reversed by this Court's decision holding class status appropriate in *Romasanta.* Therefore, United concludes, the class should be defined as it says the *Romasanta* plaintiffs originally proposed it.

We are unconvinced that United has properly interpreted the plaintiffs' earlier position. Moreover, as explained *infra,* United's statement to the district court in its motion to reconsider its January 11 order that the class as there defined was "contrary to the mandate of the Court of Appeals in this case, which defined the class as those 'similarly discharged' as was plaintiff Romasanta," misconstrues our position. Our *Romasanta* decision was not intended to be read as narrowly as United suggests.

denied relief by the district court had resigned because of the no-marriage rule and were therefore constructively discharged.[4] *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140, 144 (5th Cir. 1975). The inclusion of such persons in the class definition accords with the early motion of the *Romasanta* plaintiffs that their class include both fired and resigned stewardesses because the latter "were forced out * * * by the defendant's rule as effectively as those who were fired outright."[5] Thereafter even United told the district court that if it were appropriate to maintain the action as a class action, the "only appropriate class would be all former stewardesses who resigned or were terminated because of defendant's no-marriage policy" (R. 112).[6] In truth the position of the stewardesses who resigned involuntarily cannot rightly be distinguished from the stewardesses who were fired, for United encouraged stewardesses to resign rather than await firing. *Inda v. United Air Lines*, 565 F.2d 554, 557, 562 (9th Cir. 1977), certiorari denied, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388. Indeed the district court once so recognized because it permitted Joanne Hammersly to intervene in the *Romasanta* case (R. 45) even though she had resigned in compliance with the no-marriage rule instead of waiting to be discharged.[7] Consequently we cannot agree that the *Romasanta* plaintiffs committed themselves to limiting the class to that now urged by United.

■ Moreover, the district court's broad supervisory power in class actions requires it, especially in Title VII actions which attack class-based discrimination, to define the class to effectuate relief for all of its members. In *Romasanta*, we instructed the district court to fashion relief for all persons damaged by United's no-marriage rule in order to "establish equality, not only between the group discriminated against and other groups, but also among the members of the victimized group." 537 F.2d at 917, 918. Nevertheless, by its final class determination, the district court inexplicably denied relief to stewardesses who resigned to marry while according relief only to stewardesses who were discharged. Our *Romasanta* mandate was not so limited.

In holding that this class must include not only "dischargees" but also "resignees" on or before marriage, we are merely reaffirming our prior decision that relief must not discriminate between members of the group victimized by the no-marriage rule (537 F.2d at 918). Apart from the illegal protest requirement (see note 6 *supra*), this is the same class definition proposed by United in November 1972, adopted by the district court in December 1972, re-proposed by Mrs. McDonald after remand in December 1977 and originally adopted by the district court in January 1978.

### Period of Recovery for Class

On August 1, 1978, we granted United's petition for leave to appeal from the decision below insofar as the class order included stewardesses claiming from July 2, 1965, the effective date of Title VII of the Civil Rights Act of 1964. We agree that July 2, 1965, probably may not remain the starting date for relief.

In *Consolidated Pretrial Proceedings in the Airline Cases* (the "TWA" case), 582

---

4. The stewardesses who resigned must, as counsel for the plaintiff acknowledged at oral argument, show that their retirement was involuntary and on account of the invalid rule to be entitled to relief. Although it may be significantly easier for those who protested to make such a showing, we reiterate our *Romasanta* ruling that the fact that she did not protest will not foreclose a class member from making such a showing.

5. This motion proposed consolidation of the *Sprogis* and *Romasanta* suits, but, as noted *supra*, consolidation was denied.

6. United simultaneously successfully proposed that the class be limited to those who had protested the no-marriage policy, but this was rejected in *Romasanta*, 537 F.2d at 919.

7. At that time, the district court included in the *Romasanta* class definition both resigned and discharged stewardesses (6 FEP Cases, 156, 157), thus making it immaterial that the *Romasanta* complaint *ab initio* was limited to those who had been discharged.

F.2d 1142 (7th Cir. 1978), this Court held that the 90-day period for filing charges with the Equal Employment Opportunity Commission is jurisdictional under 42 U.S.C. § 2000e–5(d).[8] However, as we held in *Romasanta*, "The statute of limitations in Title VII actions is suspended when one member of the class initiates the grievance mechanism." 537 F.2d at 918 n. 6.[9]

■ The record (as supplemented on September 26, 1978) shows that class member plaintiffs Mary O'Connor Whitmore and Terry Baker Van Horn filed their EEOC charges on January 25, 1966. Therefore, the temporal limits of this class will date from October 27, 1965 (90 days before the EEOC charges) to November 7, 1968, when the no-marriage rule was withdrawn.[10] This ruling is not unfair to United, for it was put on notice by the Whitmore-Van Horn filings[11] that aggrieved stewardesses were challenging its no-marriage rule policy. Therefore, it is unimportant that they were intervening plaintiffs rather than original plaintiffs in the *Romasanta* suit.[12]

Reversed and remanded for further proceedings consistent herewith.

---

8. The 90-day period for filing charges with the EEOC was extended to 180 days by the 1972 amendments. 42 U.S.C. § 2000e–5(e).

9. See also *Bowe v. Colgate Palmolive Co.*, 416 F.2d 711, 720 (7th Cir. 1969); *United States v. Georgia Power Co.*, 474 F.2d 906, 925 (5th Cir. 1973); *Allen v. Amalgamated Transit Union*, 554 F.2d 876, 882–883 (8th Cir. 1977). *Inda v. United Air Lines, Inc.*, 565 F.2d 554 (9th Cir. 1977), is distinguishable because it involved an attempt by two individuals who had never filed timely complaints with the EEOC or a state agency to use the filings of other individuals to establish their right to sue.

10. On the basis of the record before this Court, October 27, 1965, appears to be the most likely tolling date. However, discovery may reveal that an earlier date is appropriate for several reasons. First, if either the Whitmore or Van Horn complaints were "pending with the Commission" on March 24, 1972 (the date of enactment of the 1972 amendments), the new 180-day limitations period would apply. Pub.L. 92–261, § 14 (quoted in Historical Note to 42 U.S.C.A. § 2000e–5). See *Inda v. United Air Lines, Inc.*, 565 F.2d 554, 560 (9th Cir. 1977). Second, discovery might turn up a prior EEOC charge, thus resulting in a different tolling date. Third, the limitations period for filing with the EEOC is extended if the complaint has first been lodged with a state agency with EEOC-like powers. 42 U.S.C. § 2000e–5(e). Prior to the 1972 amendments, a complainant filing first with such a state agency had 210 days after the discrimination to file with the EEOC. The 1972 amendments extended this to 300 days. Apparently neither Van Horn nor Whitmore filed charges with a state agency. However, the plaintiffs have suggested that Helen Read Gunst or another member of the class may have filed with a state agency before filing with the EEOC, thus entitling her to the extended limitations period. If discovery reveals this to be the case, the tolling date would be 210 or 300 days prior to the filing of the newly-discovered complaint with the EEOC, depending on whether that complaint was still "pending with the Commission" on March 24, 1972, so that the 1972 amendments apply. It is possible, therefore, if the 210 or 300-day limitations periods apply, that the class would include all stewardesses claiming from July 2, 1965, the effective date of Title VII.

11. It is immaterial that their charges were not denominated class charges. *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d 239 (3d Cir. 1975), certiorari denied, 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679; *Inda v. United Air Lines*, 565 F.2d 554 (9th Cir. 1977).

12. United argues that the only EEOC charges which can toll the statute are those of the named plaintiffs in the *Romasanta* class action, or at least those EEOC charges of persons who could have instituted suit on their own behalf. Since the EEOC proceedings on the Whitmore and Van Horn charges were never completed and right-to-sue letters never issued, these charges could not have been the basis for suit. However, United does not dispute that the reason the Whitmore and Van Horn charges were never completed was that Carole Romasanta received her right-to-sue letter first and instituted this suit as a class action. Whitmore and Van Horn were not required to go through the needless exercise of pursuing conciliation in order to intervene in the *Romasanta* suit when class status was denied in December 1972. Similarly, neither the fact that the administrative process was not completed nor the fact that Whitmore and Van Horn later settled their individual claims means that their EEOC filings cannot be preserved as the event which tolled the statute for the class of which they were members.