Kathleen C. INDA and Kathleen F. Mor-
itz on behalf of themselves and others
similarly situated, Plaintiffs,

v.

UNITED AIR LINES, INC., Defendant.

No. C–72–1890 SW.

United States District Court,
N. D. California.

On Back Pay and Seniority
April 16, 1979.

On Class Certification May 21, 1979.

James C. Paras, Robert G. Werner, Morrison, Foerster, Holloway, Clinton & Clark, San Francisco, Cal., Robert S. Savelson, Michael E. Abram, Cohen, Weiss & Simon, New York City, for defendant Air Line Pilots Association, International.

Donald D. Connors, Jr., James L. Meeder, Brobeck, Phleger & Harrison, San Francisco, Cal., for defendant United Air Lines, Inc.

Carole A. Hughes, Hill & Hansen, Scott N. Hansen, David H. Schwartz, San Francisco, Cal., for plaintiffs.

## ON BACK PAY AND SENIORITY

SPENCER WILLIAMS, District Judge.

In *Inda v. United Air Lines, Inc.,* 565 F.2d 554, 562 (9th Cir. 1977), cert. denied, 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978), the Ninth Circuit ruled "[t]he judgment in Moritz's favor should be modified to award back pay to the November 14, 1968, violation and adjust seniority accordingly." The basis for the Circuit Court's ruling was its determination that: (1) Moritz's entitlement to relief on account of her resignation on March 5, 1968 in compliance with United's illegal no-marriage rule had become time barred by her failure to file a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") within the statutory time period, and (2) United's failure to reemploy Moritz on November 14, 1968 was an independent violation of Title VII for which Moritz did file a timely charge with the EEOC and on account of which she is entitled to appropriate relief.

This court originally awarded plaintiff Moritz back pay from the date of her resignation in March of 1968. The parties are in agreement that under the holding of the Court of Appeals the back pay award for 1968 must be reduced from $5,052.00 to $986.70. In addition, an appropriate downward adjustment of the prejudgment interest award must be made. No computations have been submitted, but the parties should have no difficulty in agreeing on what the adjusted prejudgment interest award should be.

The Ninth Circuit has instructed this court "to adjust seniority to conform with re-employment as of [November 14, 1968]," *Inda,* 565 F.2d at 563, but the parties are not in agreement concerning the meaning of this instruction. United argues that Moritz's seniority date must be set at the date on which United wrongfully refused to reemploy her, *i. e.,* November 14, 1968. Plaintiff Moritz, however, contends the Ninth Circuit's instruction cannot be read so simplistically. She argues that equitable considerations, provisions of her employment contract concerning seniority, and other Title VII cases awarding retroactive seniority all support the awarding of seniority in this case to the date she was originally hired, or, in the alternative, to the date

she was originally hired but minus the time period between the date of her resignation and the date she was denied reemployment. Moritz focuses on those portions of the Ninth Circuit's *Inda* opinion which concern the representations United made to induce her to resign in compliance with the no-marriage rule, *see Inda,* 565 F.2d at 561–62, and she asserts that *Inda* requires she be treated no worse than cabin attendants who had to be fired because they would not voluntarily disclose their marital status and resign, but who were subsequently reinstated with full seniority when United revised its policy in November, 1968.

■ While Moritz's position is supported by somewhat persuasive arguments, it appears nevertheless to be contrary to a plain reading of the Court of Appeals' instructions to this court. The Court of Appeals ruled that appropriate relief in this case must be directed only to the violation represented by United's failure to reemploy Moritz, "rather than to the earlier time-barred violation" represented by her resignation. 565 F.2d at 562. This position is consistent with the ruling of the Supreme Court in *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977), in which it was held that "United was entitled to treat [respondent's resignation in compliance with the no-marriage rule] as lawful after respondent failed to file a charge of discrimination within" the statutory time period. It follows that in the present case seniority may be awarded only from the date of United's unlawful refusal to reemploy Moritz, that being the only violation of Title VII which she made the subject of a timely EEOC charge.

Accordingly, IT IS HEREBY ORDERED that plaintiff Moritz's back pay award and seniority will be measured from November 14, 1968. This requires that her back pay award for 1968 be reduced from $5,052.00 to $986.70. The parties shall submit to the court within thirty days an exact figure for prejudgment interest due on the entire back pay award as recomputed to take into account this reduction in the amount of back pay allowed.

## ON CLASS CERTIFICATION

This action is brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17, to redress alleged sex discrimination in employment practiced by defendant United Air Lines (hereinafter referred to as "United") in the effectuation and operation of its "no-marriage" rule.[1] Plaintiffs seek injunctive relief, back wages and restoration of lost benefits, and reinstatement with full seniority and benefits.

On April 8, 1974, this court denied a Rule 23 motion made by plaintiffs for a preliminary determination that this action could be maintained as a class action. Following a court trial on the individual plaintiffs' claims, the ruling against maintenance of this action as a class action was appealed to the Ninth Circuit. In *Inda v. United Air Lines, Inc.,* 565 F.2d 554 (9th Cir. 1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978), the court of appeals remanded the case in order for this court to make appropriate findings on the class action issue in light of *Price v. Lucky Stores, Inc.,* 501 F.2d 1177, 1179 (9th Cir. 1974). The circuit court also stated that a reconsideration of the class action ruling was within this court's discretion on remand.[2]

---

1. United's no-marriage rule required female, but not male, flight cabin attendants to be single and to resign immediately or be terminated upon marriage. On November 7, 1968, United abandoned its no-marriage policy. The no-marriage rule was held to be a violation of Title VII in *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir. 1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971). In *Inda v. United Air Lines, Inc.,* 405 F.Supp. 426, 432–33 (N.D.Cal.1975), this court held that the no-marriage rule violated Title VII and, addi-

tionally, that United's refusal to rehire plaintiffs Inda and Moritz in November 1968 was a further violation of Title VII. These rulings were not upset by the Ninth Circuit on appeal. See *Inda v. United Air Lines, Inc.,* 565 F.2d 554 (9th Cir. 1977), *cert. denied,* 435 U.S. 1007, 98 S.Ct. 1877, 56 L.Ed.2d 388 (1978).

2. As the court of appeals observed in remanding the case, "Much has happened since the order in question was entered. The Supreme Court has handed down decisions involving the same no-marriage rule and related issues and

## I.

### CLASS OVERLAP

■ Plaintiffs have renewed their motion that this action be permitted to proceed as a class action, changing the proposed class definition to include:

All former flight cabin attendants of United Air Lines who resigned from their positions as flight cabin attendants in anticipation of marriage between July 2, 1965 and November 7, 1968 in compliance with United Air Lines' no-marriage rule.[3]

After reviewing the newly submitted briefs and the related cases pending in other districts, and after hearing oral argument, it is apparent that this action should be maintained as a class action, although, at least at this time, only on behalf of a more limited class than plaintiffs propose. However, the court has been informed that the district court in a related action, captioned *Romasanta v. United Air Lines, Inc.,* No. 70–C–1157 (N.D.Ill. Filed 1970), has now approved maintenance of a class action on behalf of:

All women who were employed by defendant United Air Lines Inc. as stewardesses or flight attendants and who, because of said defendant's no-marriage policy resigned or were terminated between October 27, 1965 and November 7, 1968.

The class which is litigating in the Northern District of Illinois appears to be entirely inclusive of the class which this court is prepared to approve here.[4] Moreover, the Illinois action appears to raise factual and legal issues identical to those at issue in the present action. For these reasons, this court declines to approve maintenance of the present action as a class action until the parties have been heard on the question of class overlap. In order to make such consideration of the overlap issue meaningful, it is appropriate and indeed necessary to specify the class in whose behalf this court finds the present action should be maintained, and the reasons therefor.

## II.

### DEFINING THE LITIGATING CLASS

■ Title VII specifies with precision the jurisdictional prerequisites which must be satisfied before a plaintiff is entitled to institute a lawsuit in the federal district courts: plaintiff must have (1) filed timely charges of employment discrimination with the Equal Employment Opportunity Commission (hereinafter referred to as "EEOC") and (2) received and acted upon the EEOC's statutory notice of the right to sue. 42 U.S.C. §§ 2000e–5(b), (e) and (f). *See Alexander v. Gardner Denver Co.,* 415 U.S. 36, 47, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In a Title VII class action not all members of the employee class need file and comply with these jurisdictional prerequisites in order to share in relief as members of a class in whose behalf suit has been brought. *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 414 n.8, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *Inda,* 565 F.2d at 559.[5]

---

may have clarified the law in some relevant aspects." 565 F.2d at 563 (footnote omitted).

**3.** Plaintiffs originally proposed a class which also included all female flight cabin attendants who had been "denied employment" pursuant to United's no-marriage rule. The narrower class has been proposed at this time in order to limit this action to persons who suffered precisely the same injury as plaintiffs, *i. e.,* resignation in compliance with the no-marriage rule.

**4.** The *Romasanta* class includes discharged flight attendants as well as resignees, and it encompasses the claims of women who resigned or were fired much earlier than any who would be permitted to obtain relief in this court in a class action based on plaintiff Inda's representation. See discussion in Parts II and III below.

**5.** The court in *Inda* made clear, however, that filing of an EEOC charge by one employee does not toll the statute for all others who, at the time of the filing, could themselves have filed for the same violation:

The result is that timely filing of an EEOC charge is not a necessary condition to the obtaining of relief by one as a member of a class in whose behalf suit has been brought. However, if one brings suit on his own behalf, or as named plaintiff on behalf of a class, he must have secured a right to sue by timely following the procedures set forth in Title VII.
565 F.2d at 559.

The purposes of the administrative filing requirements, namely to give notice to the charged party and to bring into play the voluntary conciliation functions of the EEOC, are adequately served by a timely filing by any member of the class. *Laffey v. Northwest Airlines, Inc.,* 185 U.S.App. D.C. 322, 365, 567 F.2d 429, 472 (1976); *Bowe v. Colgate-Palmolive Co.,* 416 F.2d 711, 720 (7th Cir. 1969). As was held in *Oatis v. Crown Zellerbach Corp.,* 398 F.2d 496, 498 (5th Cir. 1968):

> It would be wasteful, if not vain, for numerous employees, all with the same grievance, to have to process many identical complaints with the EEOC. If it is impossible to reach a settlement with one discriminatee, what reason would there be to assume the next one would be successful. The better approach would appear to be that once an aggrieved person raises a particular issue with the EEOC which he has standing to raise, he may bring an action for himself and the class of persons similarly situated . . . .

▬ Nevertheless, it is apparent that an EEOC filing by one class member cannot revive the claims of others which were no longer viable at the time of that filing. *Laffey,* 185 U.S.App.D.C. at 365, 567 F.2d at 472. Thus, only those class members capable of having made a timely EEOC filing on or after the date on which another member actually did file are eligible to join in a class action based on that person's filing.

One question in this area which has for the most part escaped close scrutiny is whether eligibility to participate in class relief can be based on the filing date of any class member other than the named plaintiff. Although several courts have in fact stated that only those persons who could have filed charges at or after the time the representative plaintiff filed are properly members of the litigating class, *see, e. g., Wetzel v. Mutual Insurance Co.,* 508 F.2d 239, 246 (3rd Cir. 1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975); *Domingo v. New England Fish Co.,*

445 F.Supp. 421, 427–28 (W.D.Wash.1977); *Harriss v. Pan American World Airways, Inc.,* 74 F.R.D. 24, 40–41 (N.D.Cal.1977); *Martinez v. Bechtel Corp.,* 10 E.P.D. ¶ 10,-507, at 6356 (N.D.Cal.1975), none of those courts appears to have been faced with the question of possibly defining the litigating class in terms of the filing date of a class member other than the named representative.

The Seventh Circuit Court of Appeals, on the other hand, in reviewing the district court's resolution of class action issues in the *Romasanta* case, was confronted with this precise situation. In response, the court of appeals directed certification of a class whose membership would be based not on the EEOC filing date of the named representative, but rather on the earlier filing date of other members of the proposed class whose charges were still pending with the EEOC at the time the class action was brought. *See McDonald v. United Air Lines, Inc.,* 587 F.2d 357, 360–61 (7th Cir. 1978). Furthermore, the court indicated that if discovery turned up an even earlier EEOC filing, then the class would be enlarged accordingly. *Id.* at 361 n.10. In the Seventh Circuit's view, therefore, institution of the class action not only eliminated the need for those filing earlier EEOC charges to pursue their administrative remedies as a predicate to participation in class relief, but it also preserved their filing dates as the events establishing the eligibility of others to participate as members of the litigating class. *See id.* at 361 n.12.

▬ The Seventh Circuit's ruling rests on sound principles closely related to those underlying the rule that not all class members need satisfy Title VII's jurisdictional filing requirements. Once the EEOC has issued a right to sue letter to one complainant who then proceeds to institute a class action, it would be wasteful—in all probability an exercise in complete futility—to require administrative procedures to be completed with respect to earlier-filing complainants who have made identical charges. Yet,

such would be the result if persons who had filed timely EEOC charges were barred from participating in class relief just because the event giving rise to their individual grievances occurred enough days prior to the date on which the named class representative's EEOC charges were filed that they would not otherwise be eligible to participate in class relief on the basis of that representative's filing alone. It follows, therefore, that such complainants should be allowed to share in any class relief obtained by a class suit, even though they were not also eligible to file EEOC charges on or after the date the named representative filed. Such participation is entirely consistent with the purposes of Title VII's administrative provisions for by their own earlier-filed charges these complainants had put their employer on notice concerning the alleged discriminatory practice and had invoked the administrative machinery Congress has established as a means of attempting to resolve such matters outside the courthouse.

■ Having established the propriety of permitting earlier-filing complainants to participate in class relief, it would be nonsensical to deny participation to persons who could have participated in any class action originally instituted by those earlier-filing complainants, but who would not be eligible to participate as class members based alone on the filing dates of the actual named representatives. To hold otherwise would mean either rejecting the wisdom of cases such as *Oatis,* quoted above, or requiring the earlier-filing complainants to complete meaningless administrative processes solely to enable them to invoke the district court's jurisdiction over those nonfiling employees whose legal rights under Title VII matured too soon for them to be represented by the named class members. In *McDonald,* the Seventh Circuit has ruled that the relevant filing date for establishing eligibility for membership in the litigating class could be the date of the earlier-filing complainant who was not the original named class representative. This court finds itself in agreement with the Seventh Circuit on this issue.

■ This court must, nevertheless, respectfully part company with the Seventh Circuit concerning the form which the earlier-filing complainant's participation in the class action must take in order properly to place her interests and the interests of class members dependent on her filing date before the district court. As discussed earlier, Title VII's filing requirements are jurisdictional and later EEOC filings cannot revive time barred claims. From these facts, this court concludes a class representative can only invoke the district court's jurisdiction over the claims of those purported class members who were capable of filing EEOC charges at or after the time the representative did. If an earlier-filing complainant wishes to shortcut meaningless administrative procedures by participating in an already pending class suit, her EEOC filing date may serve as the basis for determining those class members, including herself, who are entitled to share in relief only if she properly invokes the district court's jurisdiction over their claims. Consistent with the express requirements and the underlying purposes of Title VII, it is this court's opinion that such jurisdiction can only be invoked if the earlier-filing complainant intervenes as a named class representative.[6] A proper intervenor for this purpose would be a complainant who filed a timely EEOC charge and whose charge is still the subject of EEOC proceedings or, if already issued a "right to sue letter," whose statutory time period for filing suit under 42 U.S.C. § 2000e–5(f)(1) has not yet been permitted to expire without institution of a class action on behalf of herself and similarly situated nonfiling persons.[7]

---

6. Intervention in such circumstances would ordinarily be governed by Fed.R.Civ.P. 24(b).

7. Note that a complainant who has previously settled her claim administratively would not be a proper intervenor under Rule 24(b) or a prop-

er class representative under Rule 23(a)(3) and (4). If a "right to sue letter" has been issued to a complainant but that complainant asserted no class rights in her suit or failed to bring suit at all within the statutory period, the benefits of possible application of her EEOC filing date

Requiring intervention does not involve any new or additional burden for the would-be class representative, for it merely preserves the necessity for a complainant to act positively in order to represent nonfiling class members. However, requiring intervention is necessary to assure that a technique for bypassing meaningless administrative procedures does not become a device for subverting the legitimate congressional purposes behind enactment of jurisdictional provisions in Title VII. These provisions reflect Congress' clearly expressed preference for administrative resolution of Title VII claims and its concerns about providing fair and prompt notice of those claims being asserted and repose of those claims which have grown stale with the passage of time. For these reasons, nonfiling employees normally neither acquire nor preserve any rights under Title VII by virtue of another employee's filing of individual EEOC charges.[8] They do, of course, have the hope that the complainant-employee will someday bring a suit for class relief in which they will be eligible to participate. But if the complainant-employee settles her individual claim administratively, or if she is simply unwilling to sue on behalf of a class,

her EEOC filing date remains entirely irrelevant to anyone else's Title VII rights:

> [A]n employee, by filing an EEOC charge on his own behalf, is not acting on behalf of a class. As in the case of Sprogis (who sued only on her own behalf, *Sprogis v. United Air Lines, Inc., supra,* 444 F.2d 1194), he may never act on behalf of a class. Until he does so, others cannot say that he has done for them that which is required of them by law.

*Inda,* 565 F.2d at 559. Under the Seventh Circuit's approach, though, a class action brought by a later-filing employee has the effect in certain cases of resurrecting the earlier complainant's filing date for class definition purposes.[9] This approach contains no guarantee or requirement that the earlier complainant's claim still be viable, or that the complainant herself be willing to assert the interests of a class. But without such guarantees, it is quite possible that nonfiling persons will be permitted to invoke judicial review of their claims without those claims ever having been the subject of EEOC conciliation efforts or the employer ever having been notified of their existence.[10] It is also quite possible that nonfiling persons will be made part of the litigat-

---

to nonfiling putative class members would be lost: for even if her EEOC filing date applied to nonfiling members they would still have failed to comply with the prerequisite of timely filing suit in accordance with section 2000e–5(f)(1).

**8.** As the court of appeals noted in *Inda,* an individual employee may file EEOC charges in behalf of a class pursuant to 42 U.S.C. § 2000e–5(b). 565 F.2d at 559. Membership in such a class, of course, remains limited by the time periods set forth in section 2000e–5(e), but for the purposes of establishing district court jurisdiction in a subsequent suit, the unnamed members of such a class would be considered as having met Title VII's EEOC filing requirement.

**9.** This would occur, for instance, where the earlier-filing complainant settled her claim before being issued a "right to sue letter," and perhaps also where the earlier-filing complainant was issued a "right to sue letter" but failed to instigate any suit at all in response. The *McDonald* court did distinguish the situation, considered by the Ninth Circuit in *Inda,* of the complainant who obtains a "right to sue letter" but then institutes suit solely on her own behalf, 587 F.2d at 361 n.9, and the filing date of

such a complainant apparently would not be available under that court's analysis to define the class in a subsequently filed class action.

**10.** An instructive example is provided by the case of an employee-complainant who settles her claim during administrative conciliation. Such a complainant would not be a proper intervenor, and under the approach adopted by this court her filing date could not serve as the basis for extending jurisdiction over any nonfiling putative class members. This result is consistent with the legislative purposes underlying the jurisdictional time periods in Title VII, for upon settlement of the complainant's claim administrative reconciliation proceedings would have no reason to continue and, absent the timely filing of charges by other employees or the EEOC itself, the employer would not be on notice that anyone else felt aggrieved as a result of its employment practices during that time. However, the holding of *McDonald* would still look to the filing date of that complainant, despite her settlement, in determining the proper litigating class in a class suit brought years later by a new complainant.

The class defined and approved by the court in *McDonald* was, in fact, based on the filing

ing class based on EEOC filing dates of complainants who never acted on behalf of a class and who never intended so to act. *Cf. Inda,* 565 F.2d at 559. However, by requiring the earlier-filing complainant to intervene as a class representative in the already pending class action as a predicate to according her EEOC filing date jurisdictional significance for nonfiling persons, relief in that class action will be appropriately limited to those persons on whose behalf a timely-filing complainant was willing and statutorily able (with the exception, of course, of completing the administrative conciliation process) to have filed a Title VII class action. The shortcutting of administrative processes will not thereby result in any illegitimate expansion of substantive rights under Title VII.

■ In summary, the definition of the proper litigating class in a Title VII case includes those persons who were capable of filing EEOC charges on or after the date the named representative filed; but where an earlier-filing complainant is properly allowed to intervene on behalf of herself and all others similarly situated, all those persons who were capable of filing EEOC charges at or after the time she filed her charges are legitimate members of the litigating class. Until such intervention takes place, the limits of the district court's jurisdiction must be measured by the jurisdictional time period applicable to the named representative's EEOC filing.

### III.

### THE PRESENT CASE

■ In accordance with the principles and rules outlined above, the proposed class definition in the present case appears to be too broad. Plaintiffs seek to include all flight cabin attendants who resigned in anticipation of marriage between Title VII's effective date, July 2, 1965, and the date on which United abandoned its no-marriage rule, November 7, 1968. Plaintiffs have not, however, identified any class member who filed her charges with the EEOC early enough to enable persons who resigned as early as July 2, 1965 to be eligible for class membership, nor has any such member intervened in this action. At present the class must be limited to those cabin attendants who resigned no more than 180 days prior to November 18, 1968, the date on which plaintiff Inda filed her charges with the EEOC.[11]

■ The date on which plaintiff Moritz filed her EEOC charges for constructive discharge, November 13, 1968, is not controlling. Moritz resigned on March 5, 1968, more than 180 days prior to the filing of her charges. Although she is allowed to proceed in this court with her additional individual claim that United wrongfully denied her reemployment on November 14, 1968, any claim based on the earlier violation represented by her resignation became time barred upon her failure to file EEOC charges within the jurisdictional time period. *Inda,* 565 F.2d at 561–62. She cannot, therefore, be a representative of the resignation class, not being a proper member of that class herself, *see East Texas Motor Freight v. Rodriguez,* 431 U.S. 395, 403–04, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977), and the date of her filing with the EEOC is therefore irrelevant for class definition purposes.

The court will consider enlarging the definition of the litigating class only upon being presented with a timely application for

---

dates of two women who had settled their individual claims during pursuit of the statutorily-mandated administrative processes. 587 F.2d at 361 n.12. Unless these women had also filed EEOC charges on behalf of the class, *see Inda,* 565 F.2d at 559, and the class charges had remained unresolved, it would appear that they were not in position to institute their own original class suits as class representatives nor would they be proper intervening class representatives.

11. At the time Inda's EEOC charges were filed the jurisdictional time period for filing such charges with the EEOC was ninety days. However, the Ninth Circuit has ruled that the 180-day period provided for in the 1972 amendments to the act applies to the charges filed by Inda because those charges were, "on the date of enactment [March 24, 1972], on file with the Commission, and . . . final action had not yet been taken by the Commission." *Inda,* 565 F.2d at 561. Thus, any cabin attendants who resigned during the 180-day jurisdictional period governing Inda's charges are eligible for class membership.

intervention from a putative class member who filed her EEOC charges earlier than did plaintiff Inda.

## IV.

### COMPLIANCE WITH RULE 23

This more temporally limited class meets the prerequisites established in Rule 23(a) and (b). Before an action may be maintained as a class action, each of the prerequisites of Rule 23(a) as well as the requirements of one of the three subsections of Rule 23(b) must be satisfied. Rule 23(a) establishes four prerequisites to the maintenance of a class action: (1) numerosity, (2) common questions of law or fact, (3) typicality of the claims or defenses of the representative party, and (4) adequacy of representation. Rule 23(b)(2) applies to situations in which the party opposing the class has acted or refused to act on grounds generally applicable to the class.

### A. *Numerosity*

■■ There can be little doubt that sufficient numerosity is established by the 1968 United resignation statistics submitted by plaintiffs. These statistics, which were compiled by United itself, show that the number of flight cabin attendants listing marriage as a cause for resignation in 1968 was 674. The no-marriage rule was in effect for only ten months during 1968, but flight cabin attendants resigning due to the no-marriage rule during six of those months would be proper members of the class this court is prepared to approve. It is therefore reasonable to infer that a very substantial percentage of the 674 women listed as resigning in 1968 because of marriage would be class members.[12] Moreover, it is reasonable to assume that an additional number of attendants not listed as leaving because of marriage probably did in fact leave for that reason. Such was the case with plaintiff Inda, as this court previously has found. *Inda v. United Air Lines, Inc.,* 405 F.Supp. 426, 432–33 (N.D.Cal.1975). Plaintiffs have therefore met the numerosity requirement of Rule 23(a)(1).

### B. *Common Questions*

■■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. Pursuant to the commonality criterion, named plaintiffs are permitted to represent broad classes "when the evidence available at the time of the decision to maintain the action as a class action indicates that [the] defendant may have engaged in a broad policy of employment discrimination against the class." *Peterson v. Albert M. Bender Co.,* 75 F.R.D. 661, 665 (N.D.Cal.1977). *See also Piva v. Xerox Corp.,* 70 F.R.D. 378, 385–87 (N.D.Cal.1976). Evidence that United engaged in just such a discriminatory policy against the class in the present case arises from the very nature of the practice here challenged and the decisions of courts which have already considered that practice. The central issue here is whether forced resignations or constructive discharges of the class members pursuant to the no-marriage rule employed by United were violations of Title VII. The no-marriage rule was a uniform, across-the-board policy equally applicable to all female cabin attendants. It has already been determined in *Sprogis v. United Air Lines, Inc.,* 444 F.2d 1194 (7th Cir. 1971), *cert. denied,* 404 U.S. 991, 92 S.Ct. 536, 30 L.Ed.2d 543 (1971), that the no-marriage rule itself violated Title VII, and in this court's own prior judgment in favor of plaintiff Inda it was determined that her forced resignation in compliance with the no-marriage rule also violated Title VII. It is abundantly clear that the discrimination suffered by the named plaintiff resulted from the same discriminatory patterns and practices which allegedly similarly victimized the class members, and the requirement of Rule 23(a)(2) has thus easily been satisfied here. *See Wofford v. Safeway Stores, Inc.,* 78 F.R.D. 460, 478 (N.D.Cal.1978).

### C. *Typicality*

■■ The requirement of Rule 23(a)(3), that the claims or defenses of the named representative be typical of the

---

12. The number of attendants listed as leaving due to marriage was only 380 in 1969 and has

continued to drop each year since the no-marriage rule was abandoned.

claims or defenses of the class, has been much debated in recent years. In part, it undoubtedly overlaps the requirement of commonality contained in Rule 23(a)(2). However, the typicality requirement does draw the court's attention specifically to a "comparison of the claims or defenses of the representative with the claims or defenses of the class." *Taylor v. Safeway Stores, Inc.,* 524 F.2d 263, 270 (10th Cir. 1975). Plaintiff Inda seeks to represent only those flight cabin attendants who resigned in compliance with United's rule. The class is thereby limited to those employed in the same position as Inda, subject to the same discriminatory rule as she was, and having Title VII claims identical to hers. The central focus of this case for each class member is the illegality of the no-marriage rule, and their interests with respect to this rule do not significantly differ. Based on this comparison, it would appear the typicality criterion is satisfied.

■ Defendant points out, though, that it will be necessary to determine the state of mind of each purported member of the class—*i. e.,* whether each former attendant resigned because of the no-marriage rule or would have resigned upon marriage in any event. While this was the argument that persuaded this court to deny class certification in 1974, this factor no longer precludes class certification. Subsequently decided cases hold this to be a matter which must be addressed in determining the proper scope of individual relief not the existence of the class itself. *See Teamsters v. United States,* 431 U.S. 324, 361, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *see generally id.* at 357–72, 97 S.Ct. 1843. The proposed class, as narrowed by this court, would meet the typicality requirement.

## D. *Adequacy of Representation*

■ Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." There are two factors to be examined in determining whether this prerequisite has been met: (1) whether the suit is collusive or the named representatives have interests antagonistic to the class, *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 562–63 (2nd Cir. 1968); *Har-*

*riss,* 74 F.R.D. at 42, and (2) whether counsel for the named representatives is competent to conduct the litigation on behalf of the class. *Fendler v. Westgate California Corporation,* 527 F.2d 1168, 1170 (9th Cir. 1975).

### 1. *Adequacy of Named Plaintiffs*

Plaintiff Moritz is not an adequate representative of the class as defined since she has no valid claim for constructive resignation. *Inda,* 565 F.2d at 561. Without a valid claim, Moritz is not a member of the class and she cannot serve as a class representative. *See East Texas Motor Freight,* 431 U.S. at 403–04, 97 S.Ct. 1891.

■ However, plaintiff Inda is an adequate class representative. There is no evidence whatsoever that this suit is collusive and Inda's interests are identical to those of the members of the class. The fact that her individual claim has been successfully prosecuted in the district court and affirmed by the court of appeals does not prevent her representative status at this time. She has indicated a willingness to continue the case on behalf of the class. Where this willingness is present, the fact that the plaintiff has been successful in an individual claim following initial class denial should not preclude her representation when the case is remanded on the class issue. To hold otherwise could essentially thwart any appeal from district court denial of class status when the named representative has a successful individual case. *But cf. United Air Lines, Inc. v. McDonald,* 432 U.S. 385, 392–96, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977) (After the entry of judgment in favor of the named class representatives on their individual claims, intervention of an unnamed class member was permitted for the purpose of appealing the district court's denial of class action status when it became apparent the named representatives would not appeal that ruling.).

■ Nevertheless, although this court finds the representation provided by plaintiff Inda to be adequate, because she has already been successful in her individual case notice to the class members will be required in the event that a class is certified

in this action in order to permit them "to signify whether they consider representation fair and adequate" as provided in Rule 23(d)(2).[13]

### 2. *Adequacy of Counsel*

 The competency of counsel has been clearly demonstrated in this case. Counsel have vigorously appealed the denial of class certification and pursued the renewed motion for approval to maintain this action as a class action on remand. There is no indication they would not protect the rights and interests of the absent class members.

### E. *Rule 23(b)(2)*

 Plaintiffs seek to maintain this action as a class action of the type described in Rule 23(b)(2). A class is properly maintained under this section if "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." The question of the validity of forced resignation in light of the no-marriage rule is clearly appropriate for class treatment under Rule 23(b)(2), for it was an employment policy which was applied across-the-board to class members. The fact that back pay and retroactive seniority are also sought as remedies does not preclude maintenance under this section. These are equitable remedies which are generally available in suits brought under Title VII, *Albemarle Paper Co.,* 422 U.S. at 418–22, 95 S.Ct. 2362, and are appropriately addressed in a Rule 23(b)(2) class. *Wetzel,* 508 F.2d at 250; *Harriss,* 74 F.R.D. at 46. *See also Wofford,* 78 F.R.D. at 477–79.

### V.

### SUGGESTED SUBCLASS

 The existence of a potential subclass consisting of those who resigned in

compliance with the no-marriage rule and were subsequently denied reinstatement as flight cabin attendants following the abandonment of the no-marriage policy is also suggested by plaintiffs. Any such subclass would, however, be limited to those resignees who are also members of the larger class—*i. e.,* those who resigned within the 180 days prior to the filing of plaintiff Inda's EEOC claim on November 18, 1968. Inda would be a proper representative of such a subclass because she attempted a transfer from ground status to the position of cabin attendant, an attempted transfer which United denied.

Although plaintiff Moritz has a valid claim for unlawful denial of reinstatement, she cannot be a representative or member of the suggested subclass because, as earlier discussed, she is not a member of the class of resignees eligible to participate in class relief based on plaintiff Inda's EEOC filing date. She would appear, however, to be an appropriate representative of an entirely separate class—as opposed to a subclass—of women who resigned in compliance with the no-marriage rule and were refused reinstatement during the time following November 7, 1968 in which United had in force a modified no-marriage rule under which it continued to refuse to hire or rehire married women as flight cabin attendants. *See Inda,* 405 F.Supp. at 428–29, 433. However, the court has not yet been asked to approve maintenance of this action on behalf of such a class, and in any event it is not at all clear from the materials which have thus far been submitted that the requisite numerosity could be established for such a class.

### VI.

### ORDER

As indicated at the outset of this opinion, although the court now finds class treat-

---

**13.** This case is of the type described in Rule 23(b)(2). See discussion in Part IV(E) below. Although due process does not require notice in every (b)(2) action, the court in its discretion may order such notice pursuant to Rule 23(d)(2). *Elliott v. Weinberger,* 564 F.2d 1219, 1228–29 (9th Cir. 1977); *Bauman v. United States District Court,* 557 F.2d 650, 658–60 (9th Cir. 1977).

ment to be appropriate in this case, class certification will not be granted until the parties have been heard concerning the proper effect which should be given to the recent order in *Romasanta* permitting a class action to go forward there on behalf of what appears to be a broader class than that which this court would approve. The potential for conflicting court orders and duplication of efforts would seem, in this instance, to be unacceptably high, particularly given the large number of individual determinations which will be necessary at the remedial stages of these actions. Possible courses of action for this court to take at this time include granting plaintiffs' motion for class status but staying the action pending further proceedings in *Romasanta*. *See* 3B J. Moore, Federal Practice ¶ 23.93 (2d ed. 1977). Consolidation of all or a portion of these actions by means of the mechanisms provided in 28 U.S.C. § 1404 or § 1407 might also be appropriate. See also the suggested procedures set forth in Manual for Complex Litigation § 5.40 (1977). The plaintiffs in the two actions may be able to agree among themselves on a convenient and acceptable means of dividing the classes so as to facilitate administration of these claims and avoid the problems of duplication and conflicting results.[14] Finally, the parties may suggest and support other choices not mentioned here.

Accordingly, the parties in this action are hereby ordered to appear for a status conference on Tuesday, June 5, 1979, at 10:00 a.m. to discuss the matters raised in this opinion and establish, if necessary, a schedule for briefing and arguing the proper course for this action to take at this time.

---

14. One possibility which has been suggested would be to divide the class members geo-graphically between this district and the Northern District of Illinois.